## Case No. 4,884.

FLORENCE SEWING MACH. CO. v. SINGER MANUF'G CO.

[4 Fish. Pat. Cas. 329; 8 Blatchf. 113.] [1]

Circuit Court, S. D. New York. Dec. 29, 1870.

[1] [Reported by Samuel S. Fisher, Esq., and by Hon. Samuel Blatchford, District Judge, and here compiled and reprinted by permission. The syllabus and opinion are from 4 Fish. Pat. Cas. 329, and the statement is from 8 Blatchf. 113.]

Ebenezer R. Hoar and Augustus L. Soule, for complainant.

Edwin W. Stoughton, George Gifford, and Solomon J. Gordon, for defendant.

WOODRUFF, Circuit Judge. Three principal questions were discussed on the hearing of this cause: (1) Whether a case is made entitling the complainant to any relief in this court, as a court of equity? (2) Whether the relief sought can be granted in a suit to which the Wheeler & Wilson Manufacturing Company and the Grover & Baker Sewing Machine Company are not parties? (3) Whether the proofs establish that the defendant and the Wheeler & Wilson Manufacturing Company and the Grover & Baker Sewing Machine Company have given such a license to another company, as entitles the complainant to a reduction in the patent rent or license fee originally stipulated to be paid in the agreement mentioned in the bill of complaint?

(1) Upon the first of these questions, I find great difficulty in sustaining the present suit. The rights of the parties to the agreement by which the license was granted to the complainant are, under that agreement, purely legal rights; and what those rights were, when the suit was brought, was dependent, as a matter of strict law, upon the facts, and did not result from any equities which existed apart from or beyond those purely legal principles.

By the express terms of the agreement, if the parties granting the license to the complainant have licensed to any other party the use of a drop-feed shuttle sewing machine using two threads, at a less patent rent or license fee than the rent or fee reserved in the complainant's license, then such last-named rent or fee is reduced; and the complainant is no longer bound to pay the rate originally stipulated. So long as the complainant pays or tenders the reduced fee, the parties granting the license cannot revoke it. Any attempt to do so will be idle and nugatory.

Viewed as an action to obtain a decree establishing in the complainant's favor the future right to enjoy the license on paying the reduced rent or fee, the complainant has no need of the assistance of any court. The rule that a court of equity will not interfere when there is full, complete, and adequate remedy at law need not be invoked. Nor is it essential to rely upon the 16th section of the act of congress of September 24, 1789 (1 Stat. 82), which declares, that "suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate, and complete remedy may be had at law;" for, here, the complainant has the remedy in its own hands, and can assert, exercise and maintain its rights without invoking the aid of a court of law or equity. If the fact be as alleged in the bill, that the said parties granting the license to the complainant have granted the specified license to another at a less rate, it is only necessary for the complainant to pay, or, if payment be not accepted, to tender, the reduced rent, and the complainant's continued right to use the licensed inventions is perfect and unimpeachable.

On what ground, then, can the power of this court be invoked for the protection of the complainant in the future use of these inventions?

The complainant has no need of a discovery. The bill of complainant avers, that it has already discovered the facts upon which the right to use the invention at a reduced rent

or fee arose. The instrument alleged to work that result is annexed to the bill, and the whole endeavor in this suit has been to prove that such instrument, by its true meaning and effect, is a license to a third party to use the specified invention, and thereby to reduce the complainant's license fee.

There is no doctrine akin to the principles upon which bills quia timet are sustained, that will avail the complainant. Nothing is to be apprehended from the lapse of time or the loss of evidence. That is not suggested in the bill. The complainant can bring the matter to an immediate test by standing on the agreement, and insisting upon and acting according to the legal rights secured thereby, and the written license granted to the third party is known and susceptible of proof at any time.

The complainant cannot be disturbed in the use of the inventions; for, if the fact be as alleged, the other parties cannot restrain such use, or collect more than the reduced rent or license fee. The complainant's defence is perfect without resort to a court of equity.

Nor has the complainant a right to come into this court to obtain a construction of the contract made with the defendant, and the companies associated with the defendant. Courts of equity do, it is true, lend their aid to parties standing in a trust relation, and entitled, by reason thereof, to the peculiar protection of a court of equity, having special jurisdiction of trusts, as, for example, for the construction of wills, trust deeds. &c., in aid of executors and trustees charged with trusts; but no such jurisdiction exists entitling parties to ordinary contracts to ask an interpretation of such contracts. Indeed, the complainant here does not claim, or even admit, that the agreement is of doubtful meaning, but proceeds upon the fact that the defendant and the other associated companies deny that they have given any license to use the invention mentioned in the agreement; and the appeal to this court is, that the court decide whether the act mentioned in the agreement has been done. Neither party denies, that, if a license has been granted at a less rate than was stipulated in the agreement with the complainant, the right of the latter to a reduction is clear, according to the terms of such agreement. In saying this, I do not overlook the allegation by the defendant, that, if the license granted to a third party is in fact a license to use the specified invention, it was a mistake as to which the defendant is entitled to relief. I am now dealing with the case of the complainant. The allegation of such mistake, even if made before the bill was filed, did not warrant the complainant in coming into court to obtain a decree in negation of any such allegation. It will be enough for the complainant to assert and exercise its legal rights, and, if the defendant and the other companies attempt to restrain the continued use of the inventions licensed, put them to their proof of mistake, and, as I think, to the proof of a very different case from that which, in that respect, is set up in this answer, and proved by the testimony.

The allegations in the bill would seem designed to assimilate the case to suits brought to remove a cloud upon title, by its statements, that any fear on the part of the public that said machines were made or sold in violation of the right secured to any other parties by letters patent, would be productive of great and ruinous loss and injury to the complainant, and also to those persons who had purchased machines from the complainant to sell again. What has already been said seems to me sufficient to meet this view; and I am not aware that an apprehension that the defendant will deny the right of the complainant to use the licensed invention, or the fact that the defendant and the other associates threaten to give notice of their election to terminate the license, justifies an application to the court for an injunction. In that respect, each of the parties has a legal and equitable right to insist upon the agreement according to its proper meaning; and the defendant's denial that any act has been done entitling the complainant to a reduction of the license fee, in no wise hinders the complainant in the exercise of the rights secured by the license. If the defendant and the other companies should hereafter slander the complainant's title, and if no adequate redress therefor can be had at law, a case will be presented, which, to say the least, is not here presented.

The complainant has made a contract, by which, if the other contracting parties have granted to another the right of using the licensed inventions at a less rent or fee than the complainant agreed to pay, a reduction is wrought in favor of the latter by its very terms. The complainant avers that such license has been given, and that thereby the fee or rent is reduced. The defendant denies that such license to a third party has been given. The parties are in conflict upon that question. What, then, does the complainant ask, and why does it ask it? Because it is not certain that it can establish its title to a reduction, can it attempt an experiment in this court, through which it will be protected against the loss of the privilege if it fail to prove such title? If the fact be as alleged, the complainant requires no protection. If the fact be not as alleged, the complainant is entitled to no protection. It is bound to pay a rent or license fee. It differs with those who gave the license as to the amount which it is bound to pay. The other parties are entitled to terminate the license if the rent which is payable be not paid, and there is nothing inequitable in the assertion, or in the exercise, of that right. No rule of equity is involved in such a controversy. Its determination depends solely

upon a question of fact, upon the ascertainment of which the legal rights of the complainant are clear, according to its own view of the subject.

It would be a novel experiment, if a tenant were to come into a court of equity alleging that he had paid or otherwise satisfied, or been discharged from,. the rent reserved in his lease, but that his landlord denied the fact of such payment or discharge of the rent, and threatened to declare his election to terminate the tenancy pursuant to the option reserved in the lease, and thereupon to ask the court, upon proof of the facts alleged by the tenant, to adjudge that such rent is paid, satisfied, or discharged, and enjoin the landlord against declaring such election. The court would be bound to say: Upon the facts stated by you, your possession cannot be disturbed, and, if the landlord declares such election and brings ejectment, you are in no danger. So, here, the right of the defendant and the other companies to terminate the complainant's license, if the sums due for fees are not paid, is a clear legal right. Its exercise is according to the stipulations expressly assented to by the complainant, and was distinctly contemplated when the agreement was made. There is, therefore, nothing inequitable in the assertion of the right or the threat to exercise it, and it would, as it seems to me, be an unwarranted interference with their legal rights were this court to suspend its exercise.

The complainant's position is not unlike that of any other who holds title upon condition—he must perform the condition at his peril—and not unlike that of a contracting party who will be unable to enforce the contract against the other party unless he has on his part performed its stipulations. On a dispute arising on a question whether the conditions are performed, or even as to the true import of the stipulations, they cannot come into a court of equity, to have those questions settled, in order to save them from the consequences of a mistake of fact, or of a misconstruction of the contract. So, here, I think a bill to determine the meaning of the license to the complainant, if that were doubtful, which is not claimed, or to ascertain whether the defendant and the other associated companies have done the act upon which the right to a reduction of the license fee arises, and thereupon to decree that the complainant is only bound to pay the reduced rent, cannot be sustained. For that purpose it is wholly unnecessary, and such a determination is not called for by any view of the office and jurisdiction of a court of equity. The suit is, in substance, an endeavor to obtain the advice of this court, to enable the complainant to act with safety in his dealings with the defendant and the other parties to the license, in a matter depending solely upon legal principles, in order that it may not omit the payment of the stipulated rent or license fee, until it has been here adjudged that such payment is not necessary to the preservation. of the license.

(2) The objection, that the Wheeler & Wilson Manufacturing Company and the Grover & Baker Sewing Machine Company are not made parties to this suit, was not made by the defendant by demurrer, plea, or answer. If, therefore, the rights and interests of the defendant are so far several and distinct from those of the other two companies, that a decree can be made granting the relief sought without affecting the rights of those two companies, the objection should be held to be too late. Story v. Livingston, 13 Pet. [38 U. S.] 359, 375, and cases there cited; Segee v. Thomas [Case No. 12,633]. On the other hand, where a final decision cannot be made between the parties litigating without directly affecting and prejudicing the rights of others not made parties, the court cannot proceed. The objection can be taken at the hearing, and it may, and ought to be, raised and acted upon by the court itself. And, where the case cannot be thus decided between the parties, it will not avail to suggest that the absentees are beyond the jurisdiction of the circuit court, or have such residence or citizenship that, to make them parties, would defeat that jurisdiction. Mallow v. Hinde, 12 Wheat. [25 U. S.] 193; Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152, and cases therein referred to, and in the notes; Story v. Livingston, 13 Pet. [38 U. S.] 375, 376. The decision in the case of West v. Randall [Case No. 17,424] is in no conflict with these cases.

This was the rule before the act of congress of February 28, 1839 (5 Stat. 321), which provides, that "where, in any suit at law, or in equity, commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within, the district where the suit is brought, * * * it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit, between the parties who may be properly before it; but the judgment or decree * * * shall not conclude or prejudice other parties, not regularly served with process * * * and the non-joinder of parties who are not so inhabitants * * * shall constitute no matter of abatement, or other objection to said suit." But the effect of the statute, and of the 47th rule of the supreme court in equity, containing a similar provision, have been considered by the supreme court, and it is held by that court, in the language of Mr. Justice Nelson, in Coiron v. Millaudon, 19 How. [60 U. S.] 113, 115, that it is well settled, that neither the act of congress of 1839, nor the 47th rule of the supreme court, enables the circuit court to make a decree in a suit in the absence of a party whose rights must necessarily be affected by such decree, and that the objection

may be taken at any time, upon the hearing or in the appellate court. In that case, the absent parties were out of the jurisdiction of the court, and that was assigned in the bill as a reason for not making them parties, but the excuse was held unavailing. In Shields v. Barrow, 17 How. [58 U. S.] 130, this statute was declared to be no more than a legislative affirmance of the rule previously established, and not to touch the principle, that the court could not adjudicate directly upon the right of a party not actually or constructively before the court; and the case of Payne v. Hook, 7 Wall. [74 U. S.] 425, in effect affirms these decisions. The decision in Northern Indiana R. Co. v. Michigan Cent. R. Co., 15 How. [66 U. S.] 233, as stated by Mr. Justice McLean, was to the like effect, when there, also, the reason for not making an absent party a defendant was, that to make such party a defendant would oust the jurisdiction. These cases seem to me to require that I should decline to make the decree prayed for.

In Greene v. Sisson [Case No. 5,768], on demurrer to a bill, the court held, that, notwithstanding the act of 1839, the circuit court could not proceed in a suit in the nature of a bill to redeem, and for a relinquishment of a mortgage interest, unless all the parties beneficially interested in the mortgage were parties, and that their being out of the jurisdiction did not obviate the difficulty—citing, also, Hagan v. Walker, 14 How. [55 U. S.] 36, and Wilson v. City Bank [Case No. 17,797]. Shields v. Barrow, already referred to, was a bill to rescind a contract, and it was held that it could not be rescinded in part, so as to set it aside as to the parties before the court, and leave it in full force as to persons not parties to the suit; and that if, in any case, that could be done, it must be a case in which the rights of those before the court are completely separable from the rights of those who are absent. In the case of Coiron v. Millaudon, supra, where it was sought to set aside a sale of mortgaged premises made in proceedings in insolvency, and the purchasers were defendants with others, but the mortgagees were not parties, the court held that, as setting aside the sale might affect their interests, they were indispensable parties.

In this suit, the complainant seeks, not to rescind the agreement in question, but to alter and change its otherwise import and obligation, by reason of alleged acts of the contracting parties done since its execution. In principle, this is the same as if, by reason of facts alleged, it was sought to rescind it altogether. The three corporations granted to the complainant the license to use certain inventions upon certain specified terms and conditions, and the complainant agreed to pay to these corporations, for this license, a specified rent or license fee. The right to terminate the license in case such rent or fee was not paid was reserved, and was to be at the option of the latter. This court is now asked to decree a modification of that agreement, to declare that, by reason of subsequent events, a less rent or fee only is payable, to order the defendant to reduce such rent, and to enjoin the defendant and its agents, servants, and confederates, and each of them, from giving the notice, during the pendency of the suit, of their option or purpose to terminate the said license. Such relief cannot be given without directly affecting the absent parties, any more than the agreement could be declared completely rescinded. It touches their property and rights under the license. It would disable the three to assert the right reserved to them to terminate the license, or to proceed thereafter against the complainant for infringing the patents. The rights of the absent companies, inseparably connected with the right of the defendant, are the very subject in controversy. The case is not like many actions brought against one of two or more parties jointly liable to pay money, in which the whole may be collected from either, and in which, contemporaneously with the foregoing decisions, the courts have held that the action could be sustained against those who are within the jurisdiction. There, a recovery establishes the obligation of the defendant to pay the debt, and only leaves the question of contribution to be settled without prejudice to the absent parties by reason of the judgment. Here, the object and effect of the decree sought, is to destroy the right of the three companies to enforce their agreement, and assert their rights to the inventions in question as against the complainant.

If it were possible to decree that, as to the present defendant, an abatement from a possible one-third of the license fee should be made without prejudice to the right of the three corporations to terminate the license if the residue be not paid, there might be some plausibility in the claim to such decree; but the interest and property of the three corporations under the agreement is essentially joint, and the court cannot, in this action, settle the respective shares of the several corporations therein.

(3) These considerations render it unnecessary, and perhaps improper, that I should discuss the proofs taken upon the contested question of fact chiefly discussed on the hearing, whether such a license has been given by the three corporations as entitles the complainant to a reduction in the stipulated patent rent or license fee.

If it had appeared, that, upon proofs, such as have been produced in this case, it had been adjudged by Mr. Justice Nelson, that the specimen machine, the making and sale of which was licensed by these corporations to the Davis Sewing Machine Company, was an infringement of A. B. Wilson's patent for the four-motion feed, called also the "drop feed," I should greatly hesitate to act upon a different view of the subject, but should prefer

to rest upon the opinion of that greatly esteemed and experienced judge as an authority. A decision not upon pleadings and proofs, but a decision or opinion on a motion for an injunction, can be hardly claimed to settle the question. Its influence in this case is rather to be derived from its force as an admission by the three corporations that it was such an infringement.

But, if that be conceded, it does not follow, by necessity, that the Davis machine contains what has ever been, or is now known as, a "drop feed;" and there is much evidence to the contrary. It would be going a great way to say that every feeding apparatus which infringes the Wilson or Fitzgerald patent is, ex vi termini, a drop feed. I do not, however, intend to go any further, nor to express any opinion upon the question, whether, upon all the proofs, the complainant has shown that the three corporations have granted a license for a drop-feed shuttle sewing machine or not. Entertaining the opinions I have expressed, I could make no decree based upon the affirmative of that question. And I think it just to leave both the parties to their legal rights, unaffected by a decree herein based upon any decision of that question.

For the reasons stated, the bill should be dismissed.