SHEFFIELD & B. COAL, IRON & RAILWAY CO. et al. v. NEWMAN.

(Circuit Court of Appeals, Fifth Circuit. June 15, 1896.)

No. 473.

1. EQUITY PLEADING—SUPPLEMENTAL BILL—NEW MATTER.
   When, at the time of the filing of a bill in equity, there are liens on the property involved, which, while they exist, are an obstacle to the complainant's full satisfaction, and such liens are subsequently removed, this new matter may be set forth by a supplemental bill.

2. SAME—DISCRETION OF COURT.
   The granting of leave to file a supplemental bill or to make an amendment is discretionary with the trial court.

3. SAME—EQUITY—DEFECT OF PARTIES—DEMURRER.
   If an alleged defect of parties in equity proceedings is not apparent on the face of the bill, an objection for that reason cannot be raised by demurrer, but the defendant must set up such defect by plea or answer, pointing out and naming the persons who ought to be made parties, and giving the reasons therefor.

4. FORECLOSURE SALE—LIENS—ASSUMPTION BY PURCHASER.
   Where a foreclosure decree provides that the property shall be sold subject to all liens prior to the mortgage, and the order confirming the sale provides "that said purchasers take said property, and that it be recited in said deeds that they so take it," subject to such liens, the assumption and payment of the liens by the purchasers is an express condition of the sale.

5. SAME—EQUITABLE REDEMPTION.
   Where, by reason of the failure of the purchasers of property at foreclosure sale to comply with an express condition of the sale that they should pay certain liens, the property is sold a second time, to satisfy a superior lien, and comes back into the hands of the original purchasers, equity will consider their reacquisition as an equitable redemption for the benefit of the holders of outstanding liens, and enforce such liens upon the property.

**6.** RECEIVER'S CERTIFICATES—CONTEST BY PURCHASER OF PROPERTY—EFFECT AS TO OTHER CERTIFICATES.

Where a decree for the sale of property subject to the lien of outstanding receiver's certificates provided that the purchaser might contest a certain part of such certificates, and in subsequent proceedings by the holders of such certificates, to which the other certificate holders were not made parties, the contested certificates were declared valid, and the property ordered sold to satisfy them, *held*, that the lien of the other certificate holders was not affected by the sale.

**7.** SAME—AGREEMENT WITH CONTESTANT BY ONE NOT A PARTY.

In such case the fact that the holder of uncontested certificates entered into an agreement with the holder of the contested certificates that the sale should not in any way prejudice his rights did not make him a party to the proceeding, and the sale did not extinguish his lien as to the property, and transfer it to the proceeds.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Alabama.

On January 9, 1889, the Central Trust Company instituted a suit in the United States circuit court for the Northern district of Alabama, against the Sheffield & Birmingham Coal, Iron & Railway Company, for the foreclosure of two deeds of trusts and mortgage. One of these was to secure bonds to the amount of $1,000,000, known as the "Furnace Bonds," on that part of the property upon which three iron blast furnaces were situated; and the other deed of trust was to secure bonds to the amount of $400,000, known as the "Four Hundred Thousand Dollar First Mortgage Bonds," on lands upon which coke ovens and a coal mine were located. The property was placed in the hands of a receiver appointed in the cause. Gordon, Stobel & Laureau, on February 11, 1889, intervened, and claimed a mechanic's lien on the furnaces and the acre of ground upon which they were situated. Their claim was for $57,808.12, being the balance then due them for the construction of the furnaces. By order of the court, receiver's certificates were issued to the amount of $150,000, which, by said order, were declared to be secured by a first lien upon all the property described in both deeds of trust. The appellee, Newman, purchased $110,000 of said certificates. The Anniston Loan & Trust Company held $25,000 of the certificates which had been negotiated for the receiver by Charles D. Woodson, and the remainder was issued, but paid, before the institution of this suit. Decree of foreclosure was signed on December 3, 1889, and all the property covered by both deeds was ordered sold. The intervention of Gordon, Strobel & Laureau was still pending, undetermined, and the receiver's certificates were not due. Provision was consequently made for the payment of the mechanic's lien and the certificates, by a direction in the final decree that the whole property be sold subject to the lien of Gordon, Strobel & Laureau and the lien securing the receiver's certificates, and that the purchaser should pay off and satisfy the same. The receiver afterwards obtained an amendment of the decree, providing that the purchaser at the sale would not be compelled to assume the $25,000 of the certificates negotiated by Woodson, but would have the right to resist the payment of said Woodson certificates, "and that the validity of such five certificates be adjudicated only in this court, a proper case to be made by parties in interest." James C. Neely, at the sale under the final decree, bought the property covered by the $400,000 mortgage, on a bid of $115,000; and Napoleon Hill bought, on a bid of $350,000, the property securing the $1,000,000 of bonds and the mechanic's lien. The circuit court, in confirming the sale, on May 10, 1890, decreed again, in the following language, that the purchasers should take the property subject to, and that they assume and pay off, the indebtedness on the property, viz.: "And it is further ordered, adjudged, and decreed that said purchasers take said property, and that it be recited in said deeds that they do take said property, subject to, and that the said purchasers or their assigns assume and pay off, any and all debts, claims, and demands, of whatsoever nature, now pending and undetermined in this court, and which have been or may be allowed and adjudged by this court as prior to any right secured by either of said mortgages under foreclo-

sure of which sale was made, and likewise subject to all debts, claims, and demands, of whatsoever nature, incurred by Jacob G. Chamberlain, as receiver, in said cause, and which may remain unpaid at the termination of said Chamberlain's receivership." In the deeds made to the said purchasers, they are described as "trustees," but there is nothing to show for whom they acted.

Subsequently to the purchase by Neely and Hill, and their going into possession of the property, the Anniston Loan & Trust Company, holder of the $25,000 of certificates which the purchaser had been allowed to contest by the amendment to the foreclosure decree, filed an intervention in the main cause against Neely and Hill, and two corporations to whom Neely and Hill had conveyed the property. To these proceedings, the appellee, Newman, was not made a party; nor were the proceedings on behalf of the other certificate holders. The Anniston Loan & Trust Company's intervention did not seek to have the property sold free from incumbrance, nor to displace or affect the lien of the other holders of certificates. The Anniston Company afterwards obtained a decree determining the validity of the Woodson certificates. The decree ordered that the property be sold to satisfy the certificates, but the decree did not purport to affect the other certificates. The appellee, Newman, learning of the order of sale, and of the advertisement for the sale on January 22, 1894, employed counsel, who prepared a bill enjoining the sale until his right as a holder of certificates could be settled; and his counsel gave notice that they would apply to the circuit judge in New Orleans for a preliminary injunction. The circuit judge heard the application for a preliminary injunction; but, before the matter was decided, the Anniston Loan & Trust Company, through its counsel, offered Newman to enter into an agreement by which the sale was to be allowed to proceed, without prejudice to Newman's claims. The proposition was accepted; the application for an injunction was withdrawn; the sale took place; and the Anniston Loan & Trust Company became the purchaser on bidding a sum equal to the Woodson certificates. The master received these certificates in satisfaction and discharge of the bid, and the purchasers received their deed, and took possession of all the property.

In the meantime the supreme court of the United States (14 Sup. Ct. 343) had affirmed the decree of the circuit court which ordered the foreclosure of the mechanic's lien of Gordon, Strobel & Laureau. The furnaces and the acre of ground on which they were located were advertised to be sold on May 20, 1894, to satisfy the mechanic's lien. Newman then brought this suit, alleging the facts hereinabove stated, and claiming a preference and priority for the receiver's certificates over the mechanic's lien. Gordon, Strobel & Laureau, Neely, Hill, and the Anniston Loan & Trust Company were made defendants. The circuit court granted Newman an injunction, staying the sale until the rank of the liens could be adjudged. Gordon, Strobel & Laureau appealed to this court, and the injunction obtained by Newman was set aside, and this court held that the mechanic's lien outranked the certificates. 10 C. C. A. 587, 62 Fed. 686. The furnaces were then sold, Gordon, Strobel & Laureau becoming the purchasers on a bid for a sum less than the amount due them. This sale took place on August 22, 1894. Gordon, Strobel & Laureau shortly afterwards conveyed the furnaces to Neely, Hill, and Cole, and the Anniston Loan & Trust Company conveyed all the other property to the same purchasers, the consideration of the purchases being the amounts due the sellers on their claims. Newman's original bill was then amended, and the agreement entered into between the Anniston Loan & Trust Company and Newman was alleged. A supplemental bill was also filed by Newman, averring that the original purchase by Neely and Hill, under the decree of foreclosure, was for themselves and as trustees of E. W. Cole. The supplemental bill prayed that the payment by Neely, Hill, and Cole of the claims of Gordon, Strobel & Laureau and of the Anniston Loan & Trust Company, and the reacquisition of the property by Neely, Hill, and Cole, be considered as an equitable redemption for Newman's benefit. The Anniston Loan & Trust Company admitted in its answer that it had conveyed the property to Neely, Hill, and Cole after the filing of the original bill, and asked that the bill be dismissed as to them. Neely, Hill, and Cole demurred to the original and supplemental bills and the amendment. Their special grounds of demurrer were as follows: "As to such parts of the bill as seek and pray for the condemnation and sale of that

portion of said mortgaged property as is and was embraced in and covered by the mechanic's lien of said Gordon, Strobel & Laureau, Ltd., doth demur, and, for cause of demurrer, showeth: (1) That the complainant's bill discloses and shows that the said mechanic's lien was and is a prior charge on the portion of said property covered by it, and that said lien has been foreclosed, and the property purchased, by the said Gordon, Strobel & Laureau, Ltd., and does not disclose or show that they have parted with their right, or been paid for said property. (2) That it appears in and by said bill that the said complainant had not, at the commencement of his said suit, any equity against the said Gordon, Strobel & Laureau, Ltd., as the holders of said mechanic's lien on said portion of said property, and has not any equity imparted to it by the matter supplemental in its nature alleged in said bill, against this defendant, as a successor to the interest of said Gordon, Strobel & Laureau, Ltd., in said property embraced in and covered by said lien. And, as to so much and such parts of said bill as seek to charge this respondent personally for the said complainant's demand, this defendant doth demur, and, for cause of demurrer, showeth: (1) That it appears in and by said bill that this court has no jurisdiction of the person of this defendant to charge him on a personal covenant or debt. (2) That it appears in and by said bill that this defendant did not enter any covenant or agreement personally to pay or be responsible for the said demands of the plaintiff. (3) That, if there is a personal liability on this defendant to pay complainant's said demand, the remedy for the complainant is plain, adequate, and complete at law. And as to so much and such parts of said bill as seek to sell, and subject to complainant's demand, that portion of the said mortgaged property as was sold under the foreclosure proceedings of the said Anniston Loan & Trust Company, mentioned in the bill, and not embraced in that sold by said Gordon, Strobel & Laureau, Ltd., this defendant doth demur, and, for cause of demurrer, showeth: (1) That it appears in and by said bill that the said complainant was and is a privy to the said proceedings by the said Anniston Loan & Trust Co., resulting in the said sale and foreclosure by it, and is bound thereby, and that any lien or right of the complainant against said property so sold was and is transferred to the proceeds of such sale. (2) That the said complainant's bill had no equity against the portion of said property affected by the foreclosure proceedings of the Anniston Loan & Trust Company at the date of its filing, and the supplemental matter and matter set up by amendment alleged in the amended and supplemental bill do not give it equity against this defendant, as a successor to the interest of said J. H. Noble, trustee, the purchaser of said property under the foreclosure by the Anniston Loan & Trust Co. And to the whole of said bill, and the relief therein prayed, this defendant doth demur, and, for cause of demurrer, showeth: (1) That it appears by the said bill that there are divers other persons who are necessary parties to the said bill, but who are not made parties thereto; and, in particular, it appears that all of the persons for whom said mortgaged property was severally bought by Napoleon Hill, trustee, and J. C. Neely, trustee, are necessary parties to said bill, but that none of them except E. W. Cole are made parties. (2) That it appeareth by the plaintiff's own showing by his said bill that he is not entitled to the relief prayed by the bill against this defendant. (3) That it appears from the said bill that, at the commencement of said suit, the said plaintiff was entitled to no relief, and the supplemental matter alleged in the amended and supplemental bill did not and could not impart equity to the bill."

W. A. Gunter and H. B. Thompkins, for appellants.

John D. Rouse, Wm. Grant, and John P. Tillman, for appellee.

Before McCORMICK, Circuit Judge, and SPEER and PARLANGE, District Judges.

PARLANGE, District Judge (concurring). The questions of pleading and practice raised by the demurrer do not appear to me to be tenable. The object of the supplemental bill was to show that liens which, while they existed, were obstacles in the way of Newman's full satisfaction, had been removed since the filing of the original bill.

Story, Eq. Pl. § 346; Beach, Eq. Prac. § 490.    Chancellor Walworth, in Candler v. Pettit, 1 Paige, 168, uses the following language:

"If the complainant had no ground for the proceeding originally, he should file a new bill, showing a case which will then entitle him to equitable relief. But if his original bill was sufficient to entitle him to one kind of relief, and facts subsequently occur which entitle him to other and more extensive relief, he may have such relief by setting out such new matter in the form of a supplemental bill."

Furthermore, it has been held that the granting of leave to file a supplemental bill, or to make any amendment, is discretionary with the trial court.    Beach, Eq. Prac. § 503.    See, also, Marco v. Hicklin, 15 U. S. App. 55, 6 C. C. A. 10, and 56 Fed. 549.

The necessary parties, so far as the record shows, have all been impleaded.    The demurrer does not name the parties which the defendants claim should have been joined.    The fifty-second and fifty-third equity rules require that the fact that parties in interest are not before the court be set up by plea or answer.    If the defect of parties appears on the face of the bill, objection may be raised by demurrer; but, if the defect is not apparent, a defendant must set up the defect by plea or answer, pointing out and naming the persons who ought to be made parties, and giving the reasons therefor.    Carey v. Brown, 92 U. S. 171; Greenleaf v. Queen, 1 Pet. 138; Segee v. Thomas, 3 Blatchf. 11, Fed. Cas. No. 12,633; Florence Sewing Mach. Co. v. Singer Manuf'g Co., 8 Blatchf. 113, Fed. Cas. No. 4,884; U. S. v. Gillespie, 6 Fed. 803.

In my opinion, there can be no room for doubt that the original decree of foreclosure and the subsequent confirmation of the sale imposed on the purchasers, Neely and Hill, the obligation to satisfy the mechanic's lien and the certificates.    The decree distinctly provided that the property be sold "subject to all outstanding contractors', mechanics', vendors', or other liens," prior in rank to the mortgages, "and expressly subject to the receiver's certificates authorized to be issued by Jacob G. Chamberlain, receiver, to an amount not exceeding $150,000."    The decree further provided that:

"The purchasers of said property shall take the same upon the express condition that he or they will pay off and satisfy any and all claims now pending and undetermined in this court prior to the appointment of the receiver herein, and during the receivership; and also upon the express condition that said purchaser or purchasers will pay off, discharge, and satisfy all debts, claims, or demands, of whatever nature, which have been or may be hereafter incurred by said Jacob G. Chamberlain, receiver, which have not been or may not hereafter be paid by said Jacob G. Chamberlain."

The order of confirmation provided that:

"Said purchasers take said property, and that it be recited in said deeds' that they so take said property, subject to, and that said purchasers or their assigns assume and pay off, any and all debts, claims, and demands, of whatever nature, now pending and undetermined in this court, which have been or may be allowed and adjudged by this court as prior in rank to any right secured by either of said mortgages."

There are authorities which hold that when a purchaser takes property burdened with an incumbrance, retaining out of the purchase price the amount necessary to remove the incumbrance, he will be held to have assumed the incumbrance.    Boone, Mortg. § 125;

Jewett v. Draper, 6 Allen, 434; Comstock v. Hitt, 37 Ill. 542; Thayer v. Torrey, 37 N. J. Law, 339.    And some authorities hold that when a purchaser takes title subject to a mortgage, but without an assumption of the debt, the law will consider that he has deducted the amount of the mortgage from the price, as a trust fund remaining in his hands.    See Bunch v. Grave, 12 N. E. 514, 111 Ind. 351.    But the instant case is not a case of implied assumption; this is a case in which an express and unambiguous condition of the sale was that the purchasers should assume, pay off, and satisfy all prior incumbrances and claims.

Appellants' counsel urge that, as the decree provided for the sale of the property in two lots or parcels, it would be unjust to hold the two purchasers severally liable for the whole indebtedness.    The answer to this plea is that the decree provided, in the interest of the purchasers, that they should assume and pay the certificates ratably as each parcel of property had benefited from the certificates, and Neely, Hill and Cole have, in a manner which was doubtless satisfactory to themselves, satisfied the claims of Gordon, Strobel & Laureau and the Woodson certificates.    If one of the purchasers should be made to pay more than his proportion of the indebtedness, he would have his recourse against the others.

Appellants' counsel have strenuously pressed the claim that the sale to satisfy the Woodson certificates, and the subsequent sale to satisfy the mechanic's lien, freed the property from incumbrances, and that, at the time appellee instituted his suit, he had no lien. Even if the effect of the sale under the superior mechanic's lien was to wipe out the lien of the certificates, so that a stranger would have taken the property free from the latter lien, still Neely and his associates cannot be allowed, as against appellee, to derive advantage from their neglect to perform the obligation to pay all claims, which they had assumed when they purchased under the decree of foreclosure.    Their legal duty was to pay the certificates.    Their failure to comply with the express condition of their purchase was the cause of the subsequent sales.    Under such circumstances, equity considers the reacquisition by them as an equitable redemption, for the benefit of the holders of outstanding claims.    "Equity looks upon that as done which ought to have been done."    Justice Story, in his work on Equity Jurisprudence (section 63g), said that the true meaning of the maxim just quoted is that:

"Equity will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts, contemplated by the parties, had been executed exactly as they ought to have been, not as the parties might have executed them.  *  *  *  All agreements are considered as performed which are made for a valuable consideration, in favor of persons entitled to insist upon their performance.    They are to be considered as done at the time when, according to the tenor thereof, they ought to have been performed.    They are also deemed to have the same consequences attached to them; so that one party, or his privies, shall not derive benefit by his laches or neglect; and the other party, for whose profit the contract was designed, or his privies, shall not suffer thereby."

Justice Story also said (Eq. Jur. § 410):

"It it wholly immaterial of what nature the equity is, whether it is a lien or an incumbrance or a trust or other claim; for a bona fide purchase of an estate, for a

valuable consideration, purges away the equity from the estate, in the hands of all persons who may derive title under it, with the exception of the original party whose conscience stands bound by the violation of his trust and meditated fraud. But, if the estate becomes revested in him, the original equity will reattach to it in his hands."

Insurance Co. v. Eldredge, 102 U. S. 545; Noonan v. Lee, 2 Black, 506; Kilpatrick v. Haley, 13 C. C. A. 480, 66 Fed. 133; Cooley, Tax'n (2d Ed.) p. 500 et seq.; Blake v. Howe, 15 Am. Dec. 681, and note; 1 Jones, Mortg. § 680; Lamborn v. County Com'rs, 97 U. S. 181; Pom. Eq. Jur. § 754; Clark v. McNeal, 114 N. Y. 287, 21 N. E. 405.

Doubtless, the general rule is that payment of a mortgage by one who assumed it, by whatever means or in whatever form the payment is made, operates as a discharge, Thompson v. Heywood, 129 Mass. 401; McCabe v. Swap, 14 Allen, 188; Putnam v. Collamore, 120 Mass. 454; Birke v. Abbott (Ind. Sup.) 1 N. E. 485.

Appellants' contention, with regard to that part of the property which was sold to satisfy the Woodson certificates, raises a question which must be decided from a standpoint somewhat different. To the proceedings which resulted in that decree, the appellee was not made a party. The decree only provided for the payment of a part of the certificates, the contest as to the validity of which had been previously allowed in the original cause. The appellants urge that, although appellee was not an actual party, he was a privy, because the proceedings on the Woodson certificates were a continuation of an issue in the original cause. This contention is without force. The "case" to be made under the reservation as to the Woodson certificates was a case to be litigated between the parties in interest, viz. the future purchasers (who were unknown at the time the reservation was made) and the holders of the Woodson certificates. The future purchasers were the only parties in interest authorized to resist payment of those certificates. The suit was not brought on behalf of any other certificate holders. The proceedings against the purchasers alone amounted, therefore, to an original suit. It has been held that, "where a bill does not relate to some matter already litigated in the same court by the same persons, it is an original bill, and not ancillary to the original suit." Christmas v. Russell, 14 Wall. 69; also, Smith v. Woolfolk, 115 U. S. 143, 5 Sup. Ct. 1177; Carey v. Railway Co., 161 U. S. 131, 16 Sup. Ct. 537.

In the Pacific Railway Case, 111 U. S. 505, 4 Sup. Ct. 583, which was a suit by a stockholder to set aside a decree of foreclosure, it was said that such a suit is, in the chancery sense, an independent action, and is treated as a continuation of the original cause for the purpose of jurisdiction only.

In Ray v. Norseworthy, 23 Wall. 128, the court said:

"No man is to be condemned without an opportunity to be heard, nor is there any well-considered case which gives support to the proposition that a judgment, order, sentence, or decree disposing of property subject to conflicting claims will affect the rights of any one not a party to the proceedings."

Also, Dupasseur v. Rochereau, 21 Wall. 130; Howard v. Railroad Co., 101 U. S. 837.

Newman, as a holder of certificates secured concurrently with the Woodson certificates by a common lien, was an indispensable party to the suit by the Anniston Loan & Trust Company, if it was sought by that proceeding to bind him.   Doe v. McLoskey, 1 Ala. 708; Boykin v. Rain, 28 Ala. 341, 342; Railroad Co. v. Orr, 18 Wall. 471; Pugh v. Mining Co., 112 U. S. 238, 5 Sup. Ct. 131; Ackerson v. Railroad Co., 28 N. J. Eq. 542; Byers v. Brannon (Tex. Sup.) 19 S. W. 1091; Johnson v. Powers, 139 U. S. 156, 11 Sup. Ct. 525; Bedon v. Davie, 144 U. S. 142, 12 Sup. Ct. 665; Litchfield v. Goodnow's Adm'r, 123 U. S. 549, 8 Sup. Ct. 210; Jackson v. Ludeling, 21 Wall. 616; Railway Co. v. Parker, 143 U. S. 58, 12 Sup. Ct. 364, 369.   In Pugh v. Mining Co., supra, the court said:  "It requires no authority to show that the sale of the mortgaged property upon a judgment recovered upon part of the notes secured by the mortgage does not preclude the holder of the other notes secured by the same mortgage." As to the holders of the outstanding notes, the mortgage is as though it had not been foreclosed. . Collins v. Riggs, 14 Wall. 491.

I do not understand that appellants' counsel seriously dispute this general principle.   They seem to endeavor to show that the agreement which appellee entered into virtually made him a party to the proceedings instituted by the Anniston Loan & Trust Company; that the agreement constituted an assent to the sale; and that appellee's lien was thereby extinguished as to the property and transferred to the proceeds of the sale.   In my judgment, the contention is untenable.   The agreement expressly stipulated that Newman should have the right to claim the amount due him as a pro rata upon the property, by suit and foreclosure, as if the agreement had not been entered into.   The agreement expressly stated that the sale should not in any manner prejudice Newman's rights.   It need hardly be said that Newman's motive was to protect, not to destroy, his rights. The agreement was a lawful one.   The object in view and the purpose in making the agreement are obvious.   Passing upon the matter in the light of the circumstances existing at the time the agreement was entered into, it is impossible to put upon it the construction contended for by appellants' counsel.   That construction would go counter to all the settled rules for the interpretation of contracts, and would have to proceed upon the theory that Newman willingly assisted in the destruction of his rights.   The property was acquired by the Anniston Loan & Trust Company, subject to the agreement with Newman.   When Newman filed his bill, the Anniston Loan & Trust Company owned the property.   Neely and his associates bought pendente lite, subject to the same equity pleadable against the Anniston Loan & Trust Company.   The decree and amendments to pleadings in the cause were binding on Neely and his associates.   Tilton v. Cofield, 93 U. S. 163; Mellen v. Iron Works, 131 U. S. 352, 9 Sup. Ct. 781; Bank v. Sherman, 101 U. S. 403; Norris v. Ile, 152 Ill. 190, 38 N. E. 762; Benn. Lis. Pend. 233.

For the foregoing reasons, I concur in the decree of the court affirming the decree of the circuit court.