## KILPATRICK v. HALEY.

### (Circuit Court of Appeals, Eighth Circuit. February 4, 1895.)

#### No. 490.

**1.** MORTGAGES—ACQUISITION BY OWNER OF EQUITY—MERGER.

One D. purchased the furniture of an hotel, upon which there were two chattel mortgages, which D. assumed and agreed to pay. D. afterwards sold the furniture to H., subject to the chattel mortgages. H. caused the first mortgage to be bought in by one F., with money furnished by H., and to be foreclosed, H. buying the property, and thereafter claiming to hold it discharged from the second mortgage. *Held*, that inasmuch as the mortgages were treated as part of the consideration in the contract of sale between D. and H., the first mortgage was in legal effect satisfied when H. purchased it through his agent, and he was not thereafter entitled to assert it as a subsisting lien upon the furniture.

**2.** CHATTEL MORTGAGE—SEIZING PROPERTY—BREACH OF THE PEACE.

A clause in a chattel mortgage providing that upon breach of condition, etc., it shall be lawful for the mortgagee to take immediate and full possession of the mortgaged goods, does not authorize the mortgagee to commit a breach of the peace in obtaining possession of such goods, nor to seize the same by violence.

**3.** PRINCIPAL AND AGENT—TRESPASS—PUNITIVE DAMAGES.

Where, in carrying out the instructions of his principal, an agent commits a trespass, with circumstances of wanton and reckless violence, and the principal afterwards accepts and retains the fruits of such trespass, with knowledge of the manner in which they have been obtained, punitive damages may properly be awarded in an action against the principal.

In Error to the Circuit Court of the United States for the District of Colorado.

This was an action which was brought by Ora Haley, the defendant in error, against James G. Kilpatrick, the plaintiff in error, for forcibly entering the St. Cloud Hotel, in the city of Denver, which belonged at the time to Haley, and for unlawfully removing therefrom, and converting to his

own use, a large quantity of hotel furniture which was at the time in Haley's possession. The facts out of which the controversy arises are as follows: The hotel in question and the furniture therein originally belonged to George W. Beckley. On the 18th of February, 1892, Beckley executed a chattel mortgage, in favor of J. R. Reed, on the furniture in the hotel, to secure the payment of two promissory notes, one in the sum of $1,500, due four months after date, and one for $500, due six months after date, both of them being dated February 18, 1892. On the same day Beckley executed a junior or second chattel mortgage on the same furniture, in favor of James G. Kilpatrick, to secure the payment of a note in the sum of $878, which was due on the 2d day of November, 1892. On the 24th day of February, 1892, Beckley sold and conveyed the St. Cloud Hotel, and all of the furniture therein, to Emily A. Dickson. The bill of sale of the furniture which was executed by Beckley contained the following provision: "This bill of sale is made subject to, and the warranty below excepts, two certain chattel mortgages on said goods, given to secure two promissory notes, one for $2,000. and one for $878; and, as part of the consideration above specified, the second party, by the acceptance of these presents, hereby assumes and agrees to pay said notes, together with the interest thereon." This clause of the bill of sale referred to the two chattel mortgages heretofore mentioned in favor of Reed and Kilpatrick. On the 25th of May, 1892, Ora Haley, the defendant in error, entered into an agreement with Mrs. Dickson for the purchase of said hotel and the furniture therein. The agreement between Haley and Mrs. Dickson provided that Haley, the purchaser, should take the hotel, "and all the furniture, fixtures, and household goods contained therein, subject to four obligations, to wit, one deed of trust in the sum of twelve thousand dollars, one of five thousand dollars, one of twenty-five hundred dollars (on the realty), and a chattel mortgage on the furniture in the sum of twenty-six hundred and twenty-five dollars, and subject to the paid-up lease to present tenant and occupant until and up to the first day of August, 1892; said party of the second part [Haley] agreeing to assume all interest as now shown by holders of the certain mortgage and three deeds of trust, and insurance policy thereon." The chattel mortgage on the furniture in the sum of $2,625, which was referred to in the foregoing clause of the agreement, was understood to be the two chattel mortgages in favor of Reed and Kilpatrick heretofore mentioned, on which the amount then due was $2,625. On the 27th day of July, 1892, the mortgage in favor of Reed was purchased by John H. Farrar, with money that had been furnished for that purpose by Haley. Farrar then went through the form of making a private sale of the mortgaged property to Haley, pursuant to a power of sale contained in the mortgage. Having thus acquired the first chattel mortgage, and a title thereunder, by virtue of the sale made by Farrar, Haley immediately took possession of the St. Cloud Hotel and the furniture, and was in the peaceable possession of the same on the 4th day of August, 1892. The evidence tends to show that on the last-mentioned day Kilpatrick, the plaintiff in error, forcibly entered the St. Cloud Hotel, and, by means of his servants and agents, seized and removed nearly all of the furniture in the hotel, and converted the same to his own use. On the trial in the circuit court Haley recovered a judgment against Kilpatrick, for the wrong and injury complained of, in the sum of $3,945. To reverse that judgment, the defendant below sued out the present writ of error.

Thomas H. Hood, for plaintiff in error.

W. T. Hughes filed brief for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first question presented for consideration is whether the sale of the first chattel mortgage on the hotel furniture by Reed to Haley, after the latter had purchased the hotel furniture subject to the mortgages thereon, operated to extinguish the

first incumbrance. The plaintiff in error requested the court to instruct the jury "that the purchase of the Reed mortgage by Farrar, as Haley's agent, and with Haley's money, under the terms of the contract with Mrs. Dickson, extinguished or paid the first or Reed mortgage, and Mr. Kilpatrick's mortgage thereupon became a first lien upon the property." The circuit court declined to give the instruction, but charged the jury, in lieu thereof, that the purchase of the first mortgage by Haley did not extinguish it; that Haley had the right to acquire it by purchase, and assert it as an existing lien against Kilpatrick, the owner of the second mortgage. This is the first alleged error that deserves notice. It has been held in a number of well-considered cases, and the doctrine is well established, that the lien of a mortgage or other incumbrance will be regarded as extinguished whenever such incumbrance is purchased, and becomes the property of a person who has theretofore bought the mortgaged property, and has agreed with his vendor to assume or discharge the incumbrances existing thereon. It is very generally held that, when the purchaser of an equity of redemption agrees with his vendor to assume and discharge outstanding incumbrances upon the property, the effect of such an agreement is to make the mortgaged property a primary fund for the payment of the liens existing thereon. From the fact that the mortgaged property thus becomes a primary fund for the payment of incumbrances, it follows that if the purchaser of an equity of redemption, who has agreed to assume an outstanding mortgage on the property, subsequently acquires the mortgage, and takes an assignment thereof, it will thereafter be treated as paid and extinguished; it also follows that, if the mortgagor is subsequently compelled to pay the mortgage, he becomes subrogated to all of the rights of the mortgagee, and may proceed to enforce the incumbrance against the mortgaged property either in the hands of his vendee or in the hands of a purchaser from his vendee. Russell v. Pistor, 7 N. Y. 171; Kneeland v. Moore, 138 Mass. 198; Goodyear v. Goodyear, 72 Iowa, 329, 33 N. W. 142; Burnham v. Dorr, 72 Me. 198; Winans v. Wilkie, 41 Mich. 264, 1 N. W. 1049; Frey v. Vanderhoof, 15 Wis. 396. It may be conceded that an agreement by the purchaser of an equity of redemption in mortgaged property to take the property *subject* to an existing incumbrance differs essentially from an agreement to assume or discharge the incumbrance. An agreement of the former kind does not render the purchaser personally liable either to the mortgagor or to the holder of the incumbrance for the payment of the mortgage debt; it gives him an option either to discharge the incumbrance, and thus preserve the estate, or to abandon the mortgaged property to the incumbrancer. But it does not follow as a necessary consequence that one who purchases property subject to a mortgage, without expressly agreeing to assume or pay the same, is for that reason at liberty, under all circumstances, to acquire the mortgage, and thereafter assert it as an existing lien against the mortgagor, or other persons who have an interest in the mortgaged property. On the contrary, it has been held in several well-considered cases

that where one buys property subject to an existing incumbrance, which is specified in the conveyance, the incumbrance will be understood as forming a part of the consideration for the conveyance, and, if the purchaser of the equity of redemption subsequently acquires the incumbrance, it will be treated as paid.

In the case of Drury v. Holden, 121 Ill. 130, 13 N. E. 547, the facts were these: Daggett, in exchange for unincumbered property, conveyed to Drury other property of the estimated value of $40,000, which was subject to two incumbrances, one for $19,600, and one for $6,500. Subsequently, Drury procured a third party to buy the incumbrance for $6,500, with money which had been furnished by Drury. In a suit brought by such third party to foreclose the mortgage, a decree of foreclosure was entered, and Drury purchased the property at such foreclosure sale for the sum of $1,000. It was held that the sale thus made was void, and conveyed no title, because the outstanding incumbrance was paid and extinguished when it was purchased by a third party for Drury's benefit. The court said:

"It is well established that when a party purchases premises which are incumbered to secure the payment of an indebtedness, and assumes the payment of the indebtedness as a part of the purchase money, the premises purchased are, in his hands, a primary fund for the payment of the debt, and it is his duty to pay it. Lilly v. Palmer, 51 Ill. 331; Russell v. Pistor, 7 N. Y. 171. And the rule is the same, although there be no assumption of payment of the indebtedness, if the purchase be made expressly subject to the incumbrance, and the amount of the indebtedness thereby secured is included in and forms a part of the consideration of the conveyance. Lilly v. Palmer, supra; Comstock v. Hitt, 37 Ill. 542; Fowler v. Fay, 62 Ill. 375; Russell v. Pistor, supra; Ferris v. Crawford, 2 Denio, 298."

In the case of Guernsey v. Kendall, 55 Vt. 201, 204, the facts were as follows: Guernsey bought a farm subject to the incumbrance of four mortgages. The defendant, Kendall, owned the second and fourth of these mortgages, and subsequently acquired the first mortgage. The plaintiff, Guernsey, purchased the third mortgage. He subsequently acquired the first and second mortgages, which were owned by the defendant, and, having acquired the same, he thereafter filed a bill against the defendant to compel her to pay the first and second mortgages. In default of such payment, he prayed for a decree of foreclosure, and that the mortgaged premises might be sold discharged from the lien of the fourth mortgage, which was still owned by the defendant. The bill was dismissed. The court said:

"If the mortgagor had paid the incumbrances which were paid by the orator [Guernsey], it would have been the payment of his own debts, which he was obliged to pay to relieve his estate. The orator, by the purchase of the equity of redemption, acquired the estate of the mortgagor. He had no greater estate to convey than the right to pay off the incumbrances then resting upon the premises, and by so doing his grantee would become the owner of the estate. In the absence of an agreement to pay incumbrances, it is optional with the grantee of an equity of redemption to pay them or not. If he would preserve his estate in the premises upon which the incumbrances rest, he must pay them. He may give up the property in satisfaction of the liens upon it. He cannot, by the payment of a part of the incumbrances, be subrogated to the rights of the incumbrancers whose debts he has paid, and by such subrogation defeat the liens

of other incumbrancers whose rights are prior in time to his conveyance of the equity of redemption. The mortgaged premises remained a security for the debts which the mortgages were given to secure, after the equity of redemption had been conveyed to the orator, the same as before. And, inasmuch as the orator has only the interest which the mortgagor had in the mortgaged premises, it is difficult to see how he can be subrogated to any rights that the mortgagor could not have been subrogated to. One who purchases an equity of redemption by a deed without covenants takes the estate charged with the payment of mortgage debts, and it is presumed, in the absence of any special contract, that the amount paid or agreed to be paid was the price of the property purchased, less the amount of the mortgages, and it would be for the purchaser, and not the seller, to discharge the incumbrances. * * * The orator alleges that he bought said premises subject to said incumbrances, and it was held in Sweetser v. Jones, 35 Vt. 317, that, where one purchases land expressly subject to a mortgage, the land conveyed is as effectually charged with the incumbrance of the mortgage debt as if the purchaser had expressly assumed the payment of the debt, or had himself made a mortgage of the land to secure it."

In the case of Byington v. Fountain, 61 Iowa, 512, 14 N. W. 220, and 16 N. W. 534, a person purchased land subject to the incumbrance of two mortgages. He afterwards bought in and took an assignment of the senior mortgage. It was held that the purchase thus made operated to extinguish the first mortgage, and advanced the second mortgage to the dignity of a first lien. The court said:

"When the plaintiff succeeded to the rights of Paddock in this land, he took it just as it was held by Paddock,—burdened with the payment of both mortgages. As between the plaintiff and the Amana Society and Boal and Clark [the two mortgagees], it was the duty of plaintiff to pay off both mortgages out of the land. When the plaintiff procured an assignment from the Amana Society of the notes and mortgages, this at once operated as an extinguishment of the mortgage. The mortgage came into possession of the party who was under obligation to pay it, at least to the extent of the value of the mortgaged land, and, the same party thus becoming creditor and debtor, the debt was extinguished."

In Twichell v. Mears, 8 Biss. 211, Fed. Cas. No. 14,286, it was said:

"The rule is probably, as contended for by the defendant's counsel, that the purchase of an equity of redemption from a mortgagor of real estate does not make the purchaser personally liable to the mortgagee, but where the payment of an outstanding incumbrance, created by the grantor, constitutes part of the purchase money, the law implies an undertaking by the purchaser to pay it, and the mortgagee may recover in assumpsit. The legal effect of the transaction is to leave the portion of the purchase money represented by the incumbrance in the hands of the purchaser for the purpose of paying the incumbrance, and, the promise being made for the benefit of the holder of the incumbrance, he may maintain an action to enforce it. Burr v. Beers, 24 N. Y. 178; Comstock v. Hitt, 37 Ill. 542; Garnsey v. Rogers, 47 N. Y. 234; Thompson v. Thompson, 4 Ohio St. 333."

It has also been held that if the purchaser at an execution sale of a mortgagor's equity of redemption subsequently purchases the mortgage on the land, and takes an assignment thereof, the mortgage indebtedness is thereby extinguished, and that one who purchases a mortgage under such circumstances cannot enforce the payment thereof out of other property of the mortgagor. Bank v. Burns, 87 Pa. St. 491. See, also, to the same effect, Bunch v. Grave, 111 Ind. 351, 12 N. E. 514.

In view of the foregoing authorities, we are constrained to hold that the purchase by Haley of the first chattel mortgage had the

effect of discharging that incumbrance upon the hotel furniture. Mrs. Dickson had agreed to assume and pay both of the chattel mortgages on the furniture when she acquired it by purchase from Beckley, the original mortgagor. In the contract between herself and Haley, the two chattel mortgages were described as existing incumbrances upon the property, and her vendee agreed to take the property subject to said incumbrances. Considering the circumstances under which the trade was made, it admits of no doubt, we think, that the amount of these mortgages figured as a part of the consideration in the trade between Haley and Mrs. Dickson. She received in exchange for the mortgaged property only so much as it was estimated to be worth over and above the amount of the mortgage indebtedness, on the evident assumption that her vendee would protect her from liability on the chattel mortgages, to the extent, at least, of the value of the mortgaged property. The property thus became a primary fund in Haley's hands for the payment of the mortgages, and it was his duty to devote it to that use so long as he continued to own and control the property. He certainly had no right to buy in the senior outstanding mortgage and use it as an instrument either to defeat the payment of the junior mortgage or to cast the burden of paying that mortgage upon his vendor. The evidence seems to indicate that his purpose in purchasing the first chattel mortgage was to acquire the mortgaged property at a low price by a sale made thereunder, and by this means to defeat the lien of the second chattel mortgage, which was then held by Kilpatrick, the plaintiff in error. The necessary result of such proceeding would have been to impose on Mrs. Dickson, his vendor, the burden of paying the second incumbrance, notwithstanding his express agreement with her to take the property charged with and subject to the lien of both incumbrances. Such conduct on the part of the defendant in error was clearly inconsistent with the duty that he owed to his vendor to protect her, as far as possible, from liability on the mortgages, by applying the property, so far as it would extend, to the payment of both incumbrances. For these reasons, we conclude, as hereinbefore stated, that the first chattel mortgage was in legal effect satisfied when Haley elected to purchase the same, and that he was not thereafter entitled to assert it as a subsisting lien upon the hotel furniture.

The mortgage executed by Beckley in favor of Kilpatrick contained a provision that:

"If the said goods and chattels, or any part thereof, should be attached, or claimed by any other person or persons, at any time before payment, or if the said party of the first part [Beckley] shall attempt to sell or remove the same without the authority or permission of the said party of the second part, in writing expressed, then it shall and may be lawful for the said party of the second part [Kilpatrick], or assigns, to take immediate and full possession of the whole of said goods and chattels to his own use, and sell the same for the best price that can be obtained, and, out of the money arising therefrom, to pay said note and all charges touching the same. * * *"

It is claimed by the plaintiff in error that because of the sale of the goods and chattels by Beckley to Mrs. Dickson, and by her to Haley, without Kilpatrick's written consent, a default was created

which, under the aforesaid provision of the mortgage, authorized Kilpatrick to enter the St. Cloud Hotel without Haley's consent and forcibly take and carry away the mortgaged property. This proposition was embodied in substance in an instruction which the court declined to give, and the refusal of that instruction is assigned for error. The instruction, as we think, was properly refused. The clause of the mortgage above quoted did not authorize the mortgagee to force an entrance into the hotel where the property was situated, seize the property, and wrest it from the custody of those who were then in the peaceable possession of the same. In other words, the mortgage did not authorize the mortgagee to commit a breach of the peace in obtaining control of the mortgaged property, even though the conditions of the mortgage had been broken, and a default had thereby been created. It simply gave the mortgagee a license to enter upon the premises where the property was situated, and to remove the property therefrom in a peaceable manner. It was not competent for the parties to authorize the use of force and violence, either in obtaining possession of the property or in removing it from the hotel, and it will not be presumed that the mortgagor and mortgagee intended to make such an agreement. Inasmuch, then, as all of the testimony tended to show that the mortgaged property was, in fact, taken and removed from the St. Cloud Hotel under circumstances that amounted to a breach of the peace, we think that the court properly declined to give the foregoing instruction. We are furthermore of the opinion that, in forcibly seizing and removing the property from the hotel, Kilpatrick was guilty of a trespass which renders him liable for whatever damage was occasioned by the wrongful act in question, even though it be conceded that at the time of the seizure he had a superior lien upon the mortgaged property.

The only remaining question which it seems necessary to consider at this time is whether the case was one which warranted the assessment of punitive damages. It is insisted in behalf of the defendant below that there was no evidence to warrant the allowance of such damages, and that the circuit court erred in saying to the jury, in substance, that they might, in the exercise of their best judgment and discretion, award punitive damages, if they believed that the wrongful act was done with "an intent to wantonly inflict injury upon the plaintiff." Enough has already been said of the manner in which the mortgaged chattels were taken and carried away to demonstrate that the defendant was clearly guilty of a trespass. But, in this connection, and for the purpose of showing the exact circumstances under which the wrong complained of was committed, it will be well to quote the following passage from the testimony of one of the plaintiff's witnesses, who was in charge of the hotel when the furniture was taken. He says:

"The next morning, the morning of the 5th, I woke up early, and when I got up I found Beckley in the hall in his shirt sleeves, at the front door, and I found Hinckley with his undershirt and pants on. I looked through the window, and saw Turner's vans there again. Hinckley demanded the door to be opened. We had both doors locked. He went to a window, and opened the window, and he got a ladder,—a short ladder. I went to the window, too, and protested, and told them they came in on their own peril; and he brought

in through the window the van men and a man named Richards. I heard him ask Richards for his six-shooter. Richards was then on the ladder. When they got on the inside, I stood in front of the front door, and Hinckley shoved me to one side, and said to me: 'You son of a bitch, if you don't keep your hands off this thing I will pump you full of cold lead. I will have this house if I have to burn it.' They held me by force, and went to the front door, broke the lock, opened the door, and loaded the rest of the furniture, except the three rooms."

Hinckley, the man referred to in the foregoing excerpt from the testimony, was an agent of the defendant, who had been sent by him to the hotel for the express purpose of taking and removing the furniture from the hotel to the defendant's warehouse. After the furniture was seized and removed, the defendant received, retained, and appropriated it to his own use, with knowledge of the manner in which it had been obtained, thereby ratifying what had been done in his name and in his behalf, even if he did not originally authorize the use of force and violence. We think there was evidence from which the jury might legitimately infer that the defendant intended to assert his alleged right to the property in controversy by force and arms, without reference to consequences or the legal rights of others. The conduct of the person sent to seize the property was reckless, wanton, and unlawful, and the acts of that person he has approved and adopted by receiving and retaining the property with full knowledge of the manner in which it had been obtained. Under the circumstances, the circuit court left the jury at liberty to assess exemplary damages, if they thought proper, telling them, in substance, that they were to exercise their best judgment as to whether the case was one which warranted the allowance of such damages. In so doing, we think that no error was committed by the trial court.

It follows from the preceding discussion that the circuit court erred in instructing the jury that the plaintiff was entitled to recover the value of the mortgaged chattels which were taken from the hotel, to the amount of the first chattel mortgage thereon, and the accrued interest, if the property was worth that amount. We are of the opinion, for the reasons heretofore stated, that the first chattel mortgage should have been treated as paid and extinguished when it was acquired by the plaintiff. This view of the case entitled the plaintiff to recover, on account of the wrongful taking of the mortgaged property, whatever sum it was worth, over and above the amount of the second chattel mortgage, which was owned by the defendant, and such exemplary damages, if any, as the jury saw fit to award. The existing judgment is therefore reversed, and the cause is remanded, with directions to grant a new trial.