## IRVING NAT. BANK v. LAW.

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

No. 46.

1. **Limitation of actions** ⬤➡169—Action not barred in New York, unless barred by law of place where cause of action arose (Civil Practice Act N. Y. § 13).

Under Civil Practice Act N. Y. § 13, providing that action cannot be brought after expiration of time limited by law where cause of action arose, action is not barred in New York unless barred in state where cause of action arose.

2. **Limitation of actions** ⬤➡87(1).

Law of California (Code Civ. Proc. Cal. § 351) tolls statute against nonresident who has never been in state; "return" being equivalent to "enter."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Enter–Entry; Return.]

3. **Courts** ⬤➡366(1)—Construction of local statute by state court of last resort sub silentio is conclusive on Circuit Court of Appeals.

Construction of local statute, assumed sub silentio in opinion by state court of last resort, is conclusive on Circuit Court of Appeals, regardless of such court's contrary opinion.

4. **Judgment** ⬤➡713(2), 725(1)—Merger or bar extends to matters which might have been pleaded if cause of action is same, while estoppel applies to facts necessary to decision if cause of action is different.

Merger or bar by judgment extends to all matters which were or might have been pleaded, but cause of action must be same; while estoppel extends only to facts decided and necessary to decision, in which case cause of action need not be same.

**5. Principal and agent ⬡175(1)—As one who ratifies act must accept its consequences, principal liable for agent's ratified torts.**

Rule that one who, with knowledge of facts, ratifies act done on his behalf, must accept it with all its consequences, makes principal liable for agent's torts ratified by him.

**6. Judgment ⬡728—If case is decided on one or more grounds, each ground is a good estoppel.**

Estoppel of judgment does not extend to incidental matters, though expressly decided; but, if case is decided on one or more grounds, each ground is a good estoppel.

In Error to the District Court of the United States for the Southern District of New York.

On rehearing.

Former opinion reversed, and judgment of lower court affirmed.

For former opinion, see 9 F.(2d) 536.

Guthrie B. Plante, of New York City, for plaintiff in error.

Platt, Field & Taylor, of New York City (Martin Taylor, Almet F. Jenks, Jr., and N. T. Guernsey, Jr., all of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. [1] Upon rehearing, the plaintiff brings to our attention two cases decided by the Court of Appeals of New York, which neither party cited at the first argument, and which we did not discover for ourselves, perhaps because they do not cite Isenberg v. Rainier, 145 App. Div. 256, 130 N. Y. S. 27. These are Klotz v. Angle, 220 N. Y. 347, 116 N. E. 24, and Hanna v. Stedman, 230 N. Y. 326, 130 N. E. 566, and they seem to us conclusively to construe section 13 of the New York Civil Practice Act in the sense that the plaintiff desires.

In Klotz v. Angle three causes of action in favor of three separate plaintiffs arose in Missouri against a resident of New York. Under the law of Missouri (Rev. St. 1909, § 1889) 5 years was the period of limitation, and an action was begun after 5 years in New York by an assignee of all three. In one of the cases the Missouri period had expired before the defendant died, but not so in the other two.

Under the Missouri law the death of a defendant tolls the statute only till the granting of letters, and the Court of Appeals added to the 5 years only that period. The New York law (section 21, Civil Practice Act) allows to a plaintiff 18 months after the death

of the defendant as part of the period. If this had applied, two of the plaintiff's assignors would have succeeded. However, the court gave judgment for the defendant on all the causes of action, accepting the Missouri statute as determining the time of suspension. Moreover, it looked to Missouri decisions to find whether the defendant's absence independently tolled the statute, by implication holding that, if it had, he would have remained liable. It seems clear, especially from Judge Cardozo's dissent, that the court meant to adopt the construction of Isenberg v. Rainier, supra, which we declined to follow.

Hanna v. Stedman was even a plainer case. There an action was brought in New York upon a Maryland judgment against an unincorporated association, within 20 years of its entry in Maryland. The period of limitation in Maryland in such cases is 12 years, which had expired before the action in New York was commenced. Hence, if the period limited by the Maryland statute (Code Pub. Gen. Laws Md. 1904, art. 57, § 3) applied, the action was barred. However, the judgment creditor was unable to sue the defendant in Maryland because of the nonresidence of the debtor, or at least so the court thought, and that fact was held to toll the limitation. Thus the period of limitation in Maryland was not made the period in New York, but the question was whether the action would have been barred in Maryland. This is exactly what we declined to hold on the first hearing.

[2, 3] The law of California (Code Civ. Proc. Cal. § 351) tolls the statute against a nonresident who has never been in the state. "Return" is equivalent to "enter." Foster v. Butler, 164 Cal. 623, 130 P. 6; Dougall v. Schulenberg, 101 Cal. 154, 35 P. 635; McKee v. Dodd, 152 Cal. 637, 93 P. 854, 14 L. R. A. (N. S.) 780, 125 Am. St. Rep. 82. Although the construction of section 13 was assumed sub silentio in both opinions of the Court of Appeals, in spite of Judge Cardozo's dissent in the first, the ruling is authoritative upon us, regardless of our own opinion to the contrary. In obedience to it we therefore now decide that the action at bar was begun in season.

This makes necessary a discussion of the merits and requires a statement of the facts. The action is for deceit; the complaint alleged that the plaintiff had been fraudulently induced to subscribe for 90 shares in a corporation known as the Hydrox Chemical Company of California ("of the Pacific

Coast"), and had paid to that company the sum of $4,500 on his subscription; that the frauds were practiced by one Hawk and the Hydrox Chemical Company of New Jersey, the company acting as the plaintiff's agent. Upon the trial the plaintiff offered in evidence only the judgment roll and bill of exceptions in an action between one Goodspeed and Law in the United States District Court for the Northern District of California, and rested. Goodspeed was conceded to have acted as agent for the bank in bringing the action, which resulted in a judgment for Law, later affirmed by the Circuit Court of Appeals for the Ninth Circuit. 260 F. 497, 171 C. C. A. 299. The court below held that all the facts necessary to recovery had been established by the California judgment, and gave judgment for Law.

Upon the trial in California the following facts were proved: In May, 1915, one Hawk agreed with the New Jersey company to buy its California business, which was to be transferred to a corporation of that state to be organized for that purpose. Hawk was to pay $4,500 on the execution of the contract, $8,500 within 30 days and $4,000 in notes which the new company was to assume. Later in the month the New Jersey company borrowed of the bank $8,500 on its note. To procure the loan it falsely told the bank that Hawk had already paid the initial $4,500, and it assigned as security its claim against Hawk for the $8,500 payable within 30 days. In the assignment the New Jersey company agreed to collect this claim "as the agent" of the bank, but at its own expense. On maturity the New Jersey company did not pay its note, but from time to time renewed it. Meanwhile Hawk, acting in complicity with the New Jersey company, approached Law and secured from him a subscription for 90 shares in the new company to be formed. This they accomplished by various deceits, among them a repetition of the false statement that Hawk had already paid the $4,500.

The New Jersey company then procured from the bank a change in the form of the collateral for its note of $8,500. Part of the substituted security was notes, aggregating the sum of $11,500, executed by the California company to the order of the New Jersey company, and indorsed by it to the bank. At the time when it received these notes the bank was informed of the deceit practiced on both Law and itself in telling them that Hawk had paid the $4,500 at the outset, but it was not informed until much later of the other deceits which related to the prosperity of the business. The California company did not succeed, and became bankrupt in October, 1915. The bank pressed against Law its claim on his statutory liability as a shareholder in the California company, but he refused to recognize it because of the frauds. The bank sold the collateral notes of the California company at auction under its pledge, had them bought in in its behalf, received them from the purchaser, and through its agent, Goodspeed, brought suit against Law, after learning of all the frauds practiced upon him.

The California Circuit Court of Appeals, in Goodspeed v. Law, 260 F. 497, 171 C. C. A. 299, affirmed a directed verdict for Law. They held that, in procuring the notes from the California company, the New Jersey company was collecting its claim against Hawk, for which the notes were a substitute; further, that the New Jersey company was acting as agent for the bank in so doing, by virtue of the provision to that effect in the assignment of Hawk's claim; again, that when it received the notes, and especially when it brought suit against Law upon them, the bank had full knowledge of all of Hawk's frauds in which the New Jersey company was implicated; finally, that the effort to enforce the notes was a ratification of the acts of the New Jersey company done on its behalf, and, as there could be no ratification in part, the whole transaction including the fraud had been ratified. For this reason Law was held to have proved his defense; i. e., that the notes had been procured by the fraud of a duly authorized agent of the bank.

The court treated the cases as one which involved fraud only in the procurement of the notes, apparently regarding Law's statutory liability as an incident to these, like a partial guaranty. Since the only fraud in the case was that by which Law's subscription was obtained, the court held that it was this fraud with which the bank was charged through the New Jersey company. They declined to consider whether the bank could have recovered, if fraud had been practiced on Law by one who was not an authorized agent of the bank; that is, whether the proof of fraud in procuring the subscription, standing alone, would be a defense to the action.

In the case at bar the plaintiff must establish three facts to succeed: First, that he paid $4,500 to the California company on his subscription; second, that the payment was induced by deceit; third, that the deceit was practiced with the authority of the defend-

ant. As he seeks to establish all these by the judgment in the California suit, it is necessary to inquire how far the estoppel extends. [4] A judgment may be a merger or bar, or it may be an estoppel. For the first, the cause of action must be the same; for the second, they may be as different as possible. On the other hand, the merger or bar extends, not only to all matters pleaded, but to all that might have been, while the estoppel extends only to facts decided and necessary to the decision. All this is very old law. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; So. Pac. Ry. v. U. S., 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355; United Shoe Machinery Corporation v. U. S., 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; Myers v. International Trust Co., 263 U. S. 64, 44 S. Ct. 86, 68 L. Ed. 165; U. S. v. Moser, 266 U. S. 236, 45 S. Ct. 66, 69 L. Ed. 262.

[5] The controversy at bar arises over the third issue; i. e., whether the New Jersey company was the bank's agent in deceiving him. As we have said, the California court decided this by several steps, of which one was that one who ratifies an act done on his behalf must accept it with all its consequences, if he has knowledge of all that his agent has done. Being a question of law, no estoppel applies to it; but we do not understand that the defendant disputes it. At any rate, it is a well-settled principle, and extends, not only to vitiating the transaction, but to making the principal liable to the third party for the agent's torts. Hilbery v. Hatton, 2 Hurl. & C. 822; Wilson v. Tumman, 6 M. & G. 236; Dempsey v. Chambers, 154 Mass. 330, 28 N. E. 279, 13 L. R. A. 219, 26 Am. St. Rep. 249; Morehouse v. Northrop, 33 Conn. 380, 89 Am. Dec. 211; Kilpatrick v. Haley, 66 F. 133, 13 C. C. A. 480 (C. C. A. 8). On the other hand, the facts which entered into the conclusion of the California court are established here by estoppel. These were that the New Jersey company was attempting as the bank's agent to collect their claim against Hawk when they got the notes, and that Law's subscription was a part of the same effort. This depended upon an interpretation of the whole transaction, upon the meaning of the words used in the assignment of Hawk's claim, and possibly even upon the purposes of the New Jersey company. While perhaps triable to the court, it was no less a question of fact. Obviously the same is true as to the bank's knowledge of the fraud when it brought suit. These questions were raised by Law's answer, and were expressly made the ground for the conclusion that the bank could not recover.

The defendant argues that it would have been enough for the court to find that, when the bank got the notes, it had knowledge of a part, at least, of the frauds practiced upon Law. As a mala fide holder, perhaps it could not have recovered upon his statutory liability. As to that we say nothing, because we do not agree that, even if it be true, the findings of fact are not an estoppel. As we have just said, the issue was tendered and expressly decided; it was an essential minor premise to the conclusion, given the rules of law which the court applied. The defendant's position comes to this: That a finding is not res judicata, if the court could have reached the same result by other reasoning. [6] It is indeed true that the estoppel of a judgment does not extend to matters merely incidentally involved. Hopkins v. Lee, 6 Wheat. 109, 5 L. Ed. 218; Norton v. Larney, 266 U. S. 511, 45 S. Ct. 145, 69 L. Ed. 413; Campbell v. Consalus, 25 N. Y. 613; Lewis & Nelson's Appeal, 67 Pa. 153. And this is true, even if they are expressly decided. There is some reason for attaching more weight to findings which a court supposes to be necessary to its conclusions than to those which it does not. Their importance to the result may be thought to insure more deliberateness and care in their making. But the principle has never been carried so far as to discredit findings which are collateral only if the cause had been disposed of upon other principles than those which the court had a mind to apply. On the contrary, if a court decides a case on two grounds, each is a good estoppel. Kessler v. Armstrong Cork Co., 158 F. 744, 85 C. C. A. 642 (C. C. A. 2). Similarly, if the decision of a court on a point of law is based upon several grounds, each is equally authoritative on all, and no one is obiter. Railroad Co. v. Schutte, 103 U. S. 118, 26 L. Ed. 327; U. S. v. Chamberlin, 219 U. S. 250, 31 S. Ct. 155, 55 L. Ed. 204; U. S. v. Title Ins. Co., 265 U. S. 472, 44 S. Ct. 621, 68 L. Ed. 1110.

The California courts, having decided the earlier case on the single ground of agency, it would in our judgment be no more than a logical feat to demonstrate that there were other rules of law which they might have applied, and which would have made some of their findings irrelevant. We recognize no test but that of the deliberate action of the first court, supposed by it to be essential to its conclusion. This accords the parties that day in court to which, and to which alone, they are entitled. The doctrine of res judicata rests upon the importance of ending controversies once and for all, and allows for

no exceptions based upon imported ingenuities of which the judges were unconscious, or which they rejected.

It is probably true that no proof of Law's payment of $4,500 upon his subscription was necessary to the California decision. His statutory liability did not depend upon that, and was not supposed to. But the failure to prove this was not argued at the bar, and it was proved without contradiction in the California suit. If there was any defect in proof in this regard, it was purely formal, and does not justify a new trial.

Judgment affirmed.