Irving STOLBERG, Plaintiff-Appellant,

v.

MEMBERS OF the BOARD OF TRUSTEES FOR the STATE COLLEGES OF the STATE OF CONNECTICUT et al., Defendants-Appellees and Respondents-Appellees.

No. 704, Docket 75–7426.

United States Court of Appeals, Second Circuit.

Argued April 7, 1976.

Decided June 2, 1976.

Certiorari Denied Oct. 18, 1976.

See 97 S.Ct. 260.

Louis M. Winer, New Haven, Conn. (Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn.), for plaintiff-appellant.

Bernard F. McGovern, Jr., Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Conn., Hartford, Conn.), for defendants-appellees and respondents-appellees.

Before FRIENDLY, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

The plaintiff Irving Stolberg brought an action in December 1969 in the United States District Court for the District of Connecticut under the Civil Rights Act, 42 U.S.C. § 1983, against the former president and members of the Board of Trustees of the Southern Connecticut State College (SCSC) based on their nonrenewal of his teaching contract and consequent denial of tenure, allegedly in violation of his First Amendment and Due Process rights. On February 29, 1972, Chief Judge M. Joseph Blumenfeld ordered entry of judgment for the plaintiff, directing that Stolberg be reinstated with tenure and no loss of seniority and further allowing $9,000 in compensatory damages to cover his loss of salary. The defendants did not seek review of that decision, but Stolberg appealed to this court asking for punitive damages, additional compensatory damages and attorney's fees. This court's opinion, reported at 474 F.2d 485 (1973), affirmed the denial of punitive damages and additional compensatory damages but reversed the denial of attorney's fees and remanded for a determination of their amount.

After his dismissal, Stolberg became a successful candidate for the office of State Representative in 1970, and was sworn in as a member of the Connecticut General Assembly on January 6, 1971. He was reelected in 1972 and 1974 and presently holds this office. After a delay of some two years, Stolberg resumed his professorship at SCSC on August 28, 1974. Having audited the payrolls submitted by the college, the State Auditors of Public Accounts sent letters to the Legislative Management Committee and to the then Governor, Hon. Thomas J. Meskill, on October 7, 1974 noting that under article 3, § 11 of the State Constitution[1] no member of the General Assembly shall, during the term for which he is elected, hold any appointive position in the executive branch of the state government. In response to Governor Meskill's inquiry, the Chairman of the Board of Trustees of SCSC advised him on October 17, 1974 that the Board was bound by the judgment of the United States District Court to return Stolberg to the faculty and that it was therefore inappropriate for the Trustees "to raise any questions with Mr. Stolberg concerning his position on the faculty." The Comptroller had also raised the same issue with the Attorney General and on October 28, 1974 the latter, relying upon his earlier opinion of February 9, 1971 which involved another state legislator who was teaching at a different State College, held that Stolberg was subject to the dual job ban, and further that under *State ex rel. Butera v. Lombardi,* 146 Conn. 299, 150 A.2d 309 (1959), when Stolberg became a member of the General Assembly he surrendered his position at SCSC and could not hold his position as an assistant professor at that institution.

On the basis of that opinion, the State Comptroller commenced withholding Stol-

---

1. "No member of the general assembly shall, during the term for which he is elected, hold or accept any appointive position or office in the judicial or executive department of the state government, or in the courts of the political subdivisions of the state, or in the government of any county. . . . ."

berg's bi-weekly SCSC checks commencing on November 6, 1974, and has continued to do so. The Board of Trustees has continued to submit Stolberg's name to the State Comptroller for payment on each successive college payroll. On December 12, 1974, Stolberg filed an application and petition in the Connecticut District Court for the issuance of an order to show cause and for a contempt judgment naming as defendants the members of the Board of Trustees of SCSC, and as respondents the Auditors of Public Accounts, the Governor, the Attorney General, the Assistant Attorney General, the Comptroller and certain subordinate state officials. The petition sought injunctive relief to enforce the prior judgment of the court, damages, basic salary, and counsel fees. Moreover, on June 11, 1975, after having filed almost 300 pages of briefs, plus exhibits and affidavits, plaintiff filed a motion for an interim order that he be paid his salary until the contempt motion was adjudicated. On June 23, 1975, Judge Blumenfeld denied the motion for a contempt judgment in an unpublished opinion in which, after reciting the facts, he stated:

The point of the judgment that the board offer to reinstate Stolberg was to put him in as good a position as he would have occupied but for the unconstitutional infringement of his first amendment rights. Although the judgment did not explicitly indicate that no decision on the merits of a dual-job ban claim had been made, I indicated to the parties in open court that I did not regard this issue as being in the case. . . . Now Stolberg seeks to use the judgment not as a shield against interference with his constitutional rights but as a sword predicated on grounds not litigated in the prior proceedings. This he may not do. The judgment is hereby clarified to indicate that it does not prejudice the state's right to assert its constitutional dual-job ban against Stolberg. Any complaints Stolberg may have about the assertion of this

ban must be raised in a separate proceeding (most appropriately brought in the state courts).

The motion for a contempt judgment is denied. (Footnote omitted). This appeal followed.

I

■ The appellant argues that the failure of the Board of Trustees defendants in the 1969 civil rights action to raise the dual job ban defense based on article 3, § 11 of the State Constitution and § 2–5 Conn.Gen. Stats.[2] bars the present defendants from raising the issue as a ground for refusing to pay Stolberg's salary at SCSC. The argument is posited on the principle that a final, valid determination on the merits is conclusive on the parties and those in privity with them, not only as to the matters adjudicated but those which could have been litigated in the prior action. Thus appellant invokes the doctrine of res judicata—the bar of the prior judgment extends "not only to all matters pleaded, but to all that might have been . . . ." *Irving National Bank v. Law,* 10 F.2d 721, 724 (2d Cir. 1926). Res judicata is thus distinguished from collateral estoppel where a prior judgment operates as an estoppel against a party only where there was an actual litigation and determination of the issue now in controversy, even though the subsequent action or claim is different. The distinction is ancient and well recognized. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877); see 1B J. Moore, Federal Practice ¶¶ 0.405[3], 0.441[1] (2d ed. 1974).

■ There is no basis for the application of the doctrine of collateral estoppel here. The issue of the dual job ban was never litigated in the 1969 civil rights action. In fact, no one claims that it was. The issue

2. "No member of the general assembly shall, during the term for which he is elected, be nominated, appointed or elected by the governor, the general assembly or any other appoint-

ing authority of this state to any position in the judicial, legislative or executive department of the state government, except as provided in this section. . . ."

thus becomes whether or not under res judicata principles the present respondents are now barred by the fact that the dual job ban *might* have been raised by the defendants in that action but was not. The defendants' pretrial memorandum in the initial action did raise the issue of the state constitutional and statutory ban on dual office holding. The pretrial report submitted by two special masters and endorsed "So Ordered" by a United States District Court Judge on May 7, 1971 indicated that Stolberg was then a member of the State Legislature and that the defendants would file an amended answer adding a special defense (presumably the dual job ban) within seven days. No such defense was ever interposed. However, at the close of trial, the plaintiff's attorney, Louis M. Winer, called the attention of the court and the Assistant Attorney General, Sidney D. Giber, to the fact that the defendants had failed to file a defense "about the question of office holding while on the faculty." The following colloquy ensued:

> Court: So it's not in the case. A dual job ban might affect the right to tenure?
>
> Mr. Winer: It might affect his right to return. Well, I withdraw the comment.
>
> Court: All right. Adjourn Court.

Thus the record not only reveals that the issue might have been litigated and that it was not, but that counsel for the plaintiff was perfectly well aware of it and did not press the point that it might affect his client's right to return, and that the court, as its subsequent opinion makes clear, did not consider the issue to be in the case. Since it was not an issue in the case below and not argued on appeal our subsequent substantial affirmance of the judgment adds nothing to appellant's position.

In view of Judge Blumenfeld's understanding that the judgment below did not prejudice the Attorney General's present position and the court's subsequent clarification of its own judgment, it is difficult to understand how the general res judicata rubric, which precludes what "might" have been pleaded, can now be raised when the issue was deliberately eliminated from the case, with the apparent acquiescence of plaintiff's counsel who, although recognizing that the issue might jeopardize his client's return to the faculty, nonetheless withdrew his comment and did not press the point.

■ Res judicata makes a final order or judgment rendered in one proceeding conclusive under certain circumstances in another and different proceeding. *Sunshine Coal Co. v. Adkins,* 310 U.S. 381, 402, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); *United Shoe Mach. Co. v. United States,* 258 U.S. 451, 458–59, 42 S.Ct. 363, 66 L.Ed. 708 (1922). Here, however, no second or different action has been brought. The relief sought by the petition below is essentially an enforcement of the judgment already entered in this case, joining as respondents state officials never parties to the initial action. The court which entered the judgment has unambiguously held that its terms did not preclude the Attorney General from subsequently relying upon the dual job ban. If the underlying judgment had explicitly provided that the dual job ban issue had not been litigated and that the defendants were not precluded from raising it, there would be no question that the injunctive relief and finding of contempt now sought would be properly denied. The court below has clarified its own judgment and the result should be no different.

That the issue was not in the case and was not deemed vital by either party or the court is perhaps understandable. It was not inevitable that Stolberg would continue to run for office and be elected nor was it inevitable that he would return to teaching at SCSC. His justifiable complaint was that he had been terminated for the exercise of free speech rights and not because he lacked ability to perform his job. His professional reputation was vindicated by the judgment which also awarded him $9,000 in compensatory damages and approximately $16,000 for counsel fees. While he was offered reinstatement and tenure at the close of the trial and judgment was entered directing reinstatement, he did not even seek to return to the college

until August 28, 1974, more than two years after the judgment had been entered. He had in the interim found a teaching post at another college.

█ In addition to the uncertainty of Stolberg's return to college and continuance in public office, the dual job ban of the Connecticut Constitution and statute presented unresolved questions of state law which, as Judge Blumenfeld has properly observed, are most appropriately determined by state courts. It is basic that a state court's construction of its own constitution is definitive and binding upon the federal court. *AF of L v. Watson,* 327 U.S. 582, 596, 66 S.Ct. 761, 90 L.Ed. 873 (1946); *Kelley v. Swenson,* 481 F.2d 86, 89 (8th Cir. 1973); *Sims v. Lane,* 411 F.2d 661, 665–66 (7th Cir.), cert. denied, 396 U.S. 943, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). Moreover, there has been no state court decision construing the provision in the context here posed. Hence the reluctance of the federal district court to construe the state law is understandable. See *Lehman Bros. v. Schein,* 416 U.S. 386, 390, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); *Askew v. Hargrave,* 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

We note parenthetically that appellant has recognized the issue of comity, since on July 23, 1975, two days after filing his notice of appeal here, he commenced an action in the Superior Court of Connecticut seeking a declaratory judgment and other relief as to his right to compensation under the pertinent Connecticut constitutional and statutory provisions.

Appellant's argument that his natural understanding was that since reinstatement had been ordered there would be no question of his right to salary is belied by his counsel's letter to the Assistant Attorney General on June 26, 1973 which in pertinent part reads:

> [W]hat action will your office or the defendants take if Mr. Stolberg maintains his seat in the legislature and accepts reinstatement at Southern Connecticut? *I am sure you recognize that there are questions whether Article 3, Section 11 of the 1965 Constitution covers a teaching position at Southern Connecticut, and we wish to test this in a way that is least costly and risky for Mr. Stolberg.* However, this would be no problem if the defendants and your office would take no action upon his return. Have you any precedent or earlier opinions, one way or the other, on the question whether Article 3, Section 11 covers someone teaching at a State College?

(Emphasis added). The letter is hardly consistent with the present posture of appellant that the prior judgment compelled salary payment despite the dual job ban and in fact indicates a full recognition that further litigation to test the applicability of the dual job ban to Stolberg would be necessary. In response, the Assistant Attorney General forwarded a copy of the prior adverse opinion of the Attorney General of February 9, 1971 with a covering letter which stated:

> I am sure that you did not intend to ask that the Office of the Attorney General make any commitments, other than on behalf of the defendants. I am confident that you will render your client your usual sound legal advice on any questions he has raised.

The record and the exchange of correspondence to which we have referred demonstrate that not only the court but also counsel for both parties believed that the Attorney General was not prevented from raising the dual job ban when and if Stolberg returned to SCSC while still a member of the General Assembly. In fact, counsel for Stolberg indicated that the issue would have to be tested. Despite that recognition, the procedural tactic here adopted sought instead to circumvent any determination of the issue on the merits by recourse to a res judicata theory. In our view, the effort was properly thwarted below.

Appellant urges that the judgment rendered in the initial action is binding not only upon the president and Board of Trustees of SCSC but also upon those in privity with them. Hence, it is contended that the state officials named in the order to show cause, but not joined as defendants in the

underlying action, should be held in contempt. This is a point we need not address since we have held that res judicata principles are not appropriately applied here. Judge Blumenfeld explicitly held that his judgment did not preclude the state from raising the dual job ban issue. As he indicated, that question is most appropriately litigated in the state courts where in fact it is now sub judice with a host of state officials, omitted as party defendants in the federal action now named as defendants therein.

For the reasons given the judgment below is affirmed.

MANSFIELD, Circuit Judge (dissenting):

I dissent. If ever a case was governed by the doctrine of *res judicata,* this is it. In 1971, *after* plaintiff had become a member of the Connecticut General Assembly, the Attorney General of that state, as the representative of the Trustees of the State Colleges of the State of Connecticut (SCSC), deliberately waived Connecticut's dual-job ban as a defense to plaintiff's suit for reinstatement to SCSC. The Attorney General's motive for his waiver is best known to himself. Possibly he considered his other defenses, which have since failed, to be quite adequate standing alone. Whatever his reason, the record is unequivocally clear that his waiver was the only reason why the defense was thereafter "not in the case" and why the issue, as the majority concedes, was "deliberately eliminated from the case."

The majority now reaches a bizarre conclusion. Despite the Attorney General's earlier waiver of the dual-job ban defense, it holds that he now may litigate the issue though the case has been tried and the state's other defenses have failed. The effect is to violate the very purpose of the doctrine of *res judicata,* which was designed to discourage just such belated piecemeal

assertion of defenses that *might* properly have been raised during trial, regardless whether they were, as here, deliberately waived. A waiver provides an *a fortiori* case for application of the doctrine.

The result of today's decision is, to say the least, extraordinary. The state, having lost the lawsuit, has been ordered to restore the successful plaintiff to his position as assistant professor at a state university. Thus, irrespective of his membership in the state legislature, the order entitled him to this teaching position, arguably an "appointive position or office in the . . . executive department of the state government," despite the state's dual-job ban, which prohibits a member of the legislature from holding or accepting an appointive position or office in the judicial or executive department of the state.[1] Yet the majority, while affirming his entitlement to status as an assistant professor of SCSC under our order, holds that the state may refuse to pay him the salary associated with his duties. Unless the plaintiff were willing to offer his services as charity to the state, which he is not, his legal victory has largely been turned into a pyrrhic one. Because I cannot easily subscribe to the bizarre conclusion that an order of reinstatement means reinstatement without pay, I must register my disagreement with the majority.

As the majority recognizes, the doctrine of *res judicata* applies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (citation omitted); *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876);

1. As the majority notes (p. 891), the state's position is "under *State ex rel. Butera v. Lombardi,* 146 Conn. 299, 150 A.2d 309 (1959), when Stolberg became a member of the General Assembly [on January 6, 1971] he surrendered his position at SCSC and could not hold

his position as an assistant professor at that institution." However, by permitting Stolberg to remain in the latter position pursuant to our earlier order, the majority implicitly rejects this argument.

*Boruski v. United States,* 493 F.2d 301, 304 (2d Cir.), *appeal dismissed,* 419 U.S. 808, 95 S.Ct. 20, 42 L.Ed.2d 34 (1974); 1B Moore's Federal Practice ¶ .405[3], at 631. Connecticut's dual-job ban law is precisely the sort of "admissible matter which might have been offered" to "sustain or defeat [appellant's] claim." Indeed, under the Attorney General's interpretation of the Connecticut Constitution and dual-job ban statute, once appellant was elected to the state legislature in 1970, that law constituted a complete defense to his suit for reinstatement to his teaching post as ultimately ordered by the district court in 1972. Any doubt that defendants in the original action fully recognized the "essential" nature of this defense, *United Shoe Machinery Corp. v. United States,* 258 U.S. 451, 459, 42 S.Ct. 363, 66 L.Ed. 708 (1922), is dispelled by the Pretrial Memorandum submitted by the Attorney General, in which he explicitly argued:

"When the plaintiff became a member of the General Assembly of the State of Connecticut, he became ineligible for the orders he seeks. The Connecticut Constitution Article III, Section 11 provides:

" 'No member of the general assembly shall during the term of which he is elected, hold or accept any appointive position in the judicial or executive department of the state government.
. . .'

"Section 2–5 of the Connecticut General Statutes provides:

" 'No member of the general assembly shall, during the term for which he is elected, be nominated, appointed or elected by the governor, the general assembly or any other appointing authority of this state to any position in the judicial, legislative or executive department of the state government.
. . .'

"Thus, even if the plaintiff had been a teacher with tenure, upon becoming a member of the general assembly he would have to resign his position as a teacher. Even a 'leave of absence' would not be sufficient as this would be merely 'a vacation without pay'. Pursuant to the aforementioned rules of the Board, any teacher, even one who has been granted tenure, who leaves the State College system loses his tenure; in the event he again is employed by the State College system he must again become a probationary teacher and go through the working test period. Therefore, even if this Court should decide the factual and substantive legal issues in favor of the plaintiff, it cannot grant the mandatory injunctive relief sought because the plaintiff has voluntarily cut himself off from his prior period of employment."

In reliance upon this argument, the court's Pretrial Report dated April 22, 1971, which was approved and "So Ordered" by District Judge Zampano on May 5, 1971, expressly provided that within seven days the defendant would file an amendment to its answer, adding the dual-job ban as a "special defense." However, the Attorney General thereafter chose not to add this defense or to raise it during the December, 1971, trial before Judge Blumenfeld or in the defendants' Post-Trial Brief.

The very legal authorities upon which both defendants and the majority opinion today belatedly rely as support for application of the dual-job ban to Stolberg—an earlier opinion of the Attorney General's Office dated February 9, 1971 and the case of *State ex rel. Butera v. Lombardi,* 146 Conn. 299, 150 A.2d 309 (1959)—were fully available to the defense before the original district court litigation reached either the trial or judgment stages. In light of the Attorney General's failure to raise the defense as mandated by the pretrial order, the defense must be deemed to have been waived. The Attorney General's recent attempt to circumvent the 1972 district court judgment by withholding Stolberg's salary in reliance upon the dual-job ban constitutes a clearcut contempt of the court's order of reinstatement.

To counter this striking evidence that the Attorney General was obliged to raise the dual-job ban defense in order to avoid truncated and repetitious litigation but simply decided not to do so the court offers several

arguments. First, it refers to Judge Blumenfeld's understanding that the original litigation did not present the dual-job ban question and, more specifically, emphasizes his brief comment at the end of the trial in December, 1971, regarding the defense: "So it's not. in the case." Certainly it is true that by the time the case reached Judge Blumenfeld for trial the dual-job ban was nowhere to be found in the pleadings or argument. But this is attributable entirely to the Attorney General's decision not to comply with that part of the pretrial order of Judge Zampano which authorized and directed the filing of an answer raising this defense.

The majority conveniently construes Judge Blumenfeld's remark as sanctioning an agreement or order to save or postpone the dual-job ban defense for another day. However, since the defense, if successful, would be an absolute one, the majority makes no attempt to rationalize its deferment, apparently recognizing that this would indeed be a difficult feat in the absence of a stipulation or order approved by the court, which is the normal procedure followed where the court and parties desire piecemeal trial of separate but interrelated issues. Moreover, when the court's remark is read in context, it is obvious that the court was not indicating that the defense had been preserved for the future but was merely responding to a statement by plaintiff's counsel that "There was to have been a defense filed by the defendant having to do with the plaintiff's position in the legislature and that was never filed." Thus, even when Judge Blumenfeld's remark is viewed most favorably to the defendants, it amounted at most to a neutral observation regarding the defendants' failure to raise the defense for consideration by the court. In fact if the majority is correct in asserting that the 1972 litigation did not settle the dual-job ban issue, it is difficult to justify Judge Blumenfeld's award of compensatory damages totalling $9,000 to cover Stolberg's lost salary for a time period when he was openly holding membership in the state legislature.

The majority next seeks to place some of the responsibility for the state's waiver of the dual-job ban defense upon Stolberg's failure to "press the point." But it is both unrealistic and inappropriate to expect a plaintiff to "press" the defendants' defenses, especially when, as here, the Attorney General stood mute and failed either to raise the issue at trial or to forthrightly reserve the question for later consideration. Simply to permit state officials to reassert the dual-job provision more than two years after the district court's judgment was entered and some three months after Stolberg altered his professional position and returned to SCSC is to "disturb . . . or revise . . . legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." *Federal Trade Commission v. Minneapolis-Honeywell Regulator Co.,* 344 U.S. 206, 212, 73 S.Ct. 245, 249, 97 L.Ed. 245 (1952).

Nevertheless, the majority here argues that the failure to raise the dual-job ban is "perhaps understandable" since "it was not inevitable" that Stolberg would return to teaching at SCSC and therefore the dual-job ban question might never need to be resolved. This contention apparently stems from the fact that after his unlawful termination from SCSC, Stolberg located a substitute teaching position at Quinnipiac College and "did not even seek to return to the [state] college until . . . more than two years after the judgment had been entered." But the record belies any suggestion that the parties or court believed that Stolberg was not seriously seeking reinstatement as promptly as could be arranged. His complaint expressly demanded reinstatement, defendants' Pretrial Memorandum treated reinstatement as the primary relief in issue, and the district court's award provided for such relief. At the close of trial, the Assistant Attorney General essentially admitted error and announced in open court that defendant was prepared to grant Stolberg reinstatement with tenure. In response, Stolberg's attorney made clear that, in light of Stolberg's prevailing commitments to Quinnipiac, the only uncertainty concerns "what period of time he can

come back [to SCSC]," not whether he would seek to return. Appellant's two-year delay in resuming his teaching duties at SCSC is fully explained by his need to fulfill the outstanding academic commitments that he had made to this other institution and the failure of the SCSC Board of Trustees until June, 1972, to formally authorize his reinstatement, after prompting by Stolberg some two months earlier.

Thus, there is little room for doubt that as of June, 1972, the dual-job ban represented an essential defense to Stolberg's action for reinstatement, which had been waived, and that all parties fully contemplated Stolberg's return to SCSC. The majority's final argument, therefore, follows a somewhat different path. Even though reinstatement had been ordered in 1972, the majority argues, a June 26, 1973, letter from appellant's counsel to the Attorney General demonstrates that appellant understood that the prior judgment of reinstatement did not compel the payment of salary. However, this puts a most unnatural and strained interpretation upon the letter, which states not a word about the possibility of the state's withholding salary. The most that can be inferred from the letter is that appellant may have had misgivings as to whether the Attorney General's waiver, which had clearly applied to Stolberg's 1971–72 term in the legislature, would extend to his current (1973–74) and successive legislative terms. In short, he understandably did not want to relinquish his salaried position at Quinnipiac College (which was not subject to the dual-job ban) in order to resume his post at SCSC until the state's position with respect to the future was clarified. Any doubts about the scope and duration of the Attorney General's waiver and whether Stolberg's reinstatement would be treated as an issue separate and apart from his right to receive his professor's compensation if he should be re-elected to the legislature in 1974 were dispelled by the Attorney General's response of July 10, 1974, in which he invited Stolberg to return to SCSC at the relevant pay level, whether he resumed his post in the 1973–74 school year or the 1974–75 school year, as follows:

"What action will the Attorney General or the defendants take if Professor Stolberg maintains his seat in the legislature and accepts reinstatement at Southern Connecticut State College? The defendants have been ordered to reinstate the plaintiff with the same seniority as if the contract had been renewed in 1969. *You have received Doctor Jennings' letter which states the pay grades for assistant professor . . .* The defendants seek to comply not only with the letter of Judge Blumenfeld's order, but with the spirit of his order, as well. The defendants are holding open the doors to SCSC *whether Professor Stolberg decides to return for the 1973–1974 school year or the 1974–1975 school year.*" (Emphasis added).

Thus the State of Connecticut, through its Attorney General, understood the district court's order of reinstatement to mean reinstatement with pay, at least through the 1974–75 school year.

On the strength of the Attorney General's response, appellant in 1974 returned to his teaching duties at SCSC and until November 8, 1974, was paid the salary attaching to the post to which he had been reinstated, whereupon the Comptroller, upon advice from the same Attorney General, refused thereafter to pay the salary associated with his position. Although it is true, as appellees argue, that only the Trustees were served as party defendants in the original suit, the Comptroller nevertheless has the legal responsibility of paying the salaries of faculty as certified by the Trustees, and the Attorney General represented the Trustees before the district court. In light of these closely defined legal relationships and the existence of actual notice of the court's order to all relevant state agencies, both the Comptroller and the Attorney General should fall within the reach of Rule 65(d), F.R.C.P., which insures that

"a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by

carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."

*Regal Knitwear v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945); see *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (L. Hand, J.) ("the respondent must either abet the defendant, or must be legally identified with him"). See generally 7 Moore's Federal Practice ¶ 65.13. This privity rule applies with equal force to governmental bodies, as the Supreme Court noted as early as 35 years ago:

"There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government."

*Sunshine Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1940); see *Tait v. Western Maryland Ry. Co.*, 289 U.S. 620, 626–27, 53 S.Ct. 706, 77 L.Ed. 1405 (1933). In fact, in this age of expansive government, it is not easy to ignore the dire legal and social consequences if a government bureaucracy were freely permitted to fragmentize itself into discrete units and to structure the lines of authority in such a fashion as to circumvent compliance with a valid court order.

For the foregoing reasons I would direct the district court to hold both the Comptroller and the Attorney General in civil contempt of the court's judgment unless they forthwith repay Stolberg's withheld salary and resume regular payments. However, although the state has clearly waived the dual-job ban with respect to the terms in the Connecticut legislature held by Stolberg to date, it has now served notice that it does not intend to waive the defense if Stolberg should be re-elected in November, 1976, to a two-year term beginning in January, 1977. Accordingly, I would hold that the district court's order does not extend beyond Stolberg's current term in the legislature.